·CULVER, et, Plaintiff-Appellants, v. CITY OF WARREN, et, Defendants-Appellees.

Ohio Appeals, Seventh District, Trumbull County.

No. 1183.   Decided July 6, 1948.

William H. Brooks, J. Franklin Sprull, Warren, W. M. Howard, for plaintiffs-appellants.

Mark A. Williams, City Solicitor, H. A. Burgess, Warren, for defendants-appellees.

## OPINION

By HURD, PJ.

This action in equity now in this court on appeal on questions of law and fact originated in the common pleas court of Trumbull County wherein a judgment was rendered in favor of the defendant appellees denying the prayer of the

plaintiffs appellants amended petition for a declaratory judgment, injunction and equitable relief.

For brevity and convenience the parties will be designated hereinafter as plaintiffs and defendants as they appeared in the trial court.

The defendants are the City of Warren, the duly elected, qualified and acting Mayor of the city, the duly appointed, qualified and acting Public Service and Safety Director of the city, the Superintendent of Parks, the Veterans Swim Club, a corporation not for profit organized under the laws of Ohio, the Attorney General of Ohio, the latter being made a party defendant because under the laws of Ohio it is so required.

This action relates exclusively to the rights of colored citizens to use and enjoy the Warren Municipal swimming pool built at public expense with Federal and Municipal funds, located on Mahoning Avenue adjacent to Packard Park in the City of Warren.

In their amended petition the plaintiffs allege that they are citizens, residents and taxpayers of the City of Warren, Ohio, and are the president and secretary respectively of the Warren, Ohio, Branch of the National Association for the Advancement of Colored People, an unincorporated association formed for the purpose of obtaining equal rights and opportunities for negro citizens and residents of the city of Warren and to fight injustices in courts when based on race prejudice, on behalf of themselves and other persons similarly affected at the time of the grievances complained of in the petition.

In August, 1933, the Council of the City adopted Resolution No. 1143 "declaring the necessity for the construction of a concrete swimming pool with filters and bath house facilities upon city lands adjacent to Packard Park at an estimated cost of $40,000.00, to take advantage of the benefits available under the 'National Recovery Act' by constructing such public works as a means of providing employment and authorizing an application to the Federal Emergency Public Works Administration for a grant of thirty percent of such sum and a loan of seventy percent thereof to be acquired by mortgage upon the improvement."

Section 1 of the Resolution is as follows:

"Warren City Council does hereby find and determine the necessity for the construction of a reinforced concrete swimming pool with filter and bathhouse facilities, at an estimated cost of $40,000.00 to be constructed upon city owned park lands adjacent to Packard Park; as a means of providing work for numerous unemployed citizens of the City of Warren."

The property upon which the swimming pool was constructed had been originally purchased by the city with municipal funds for the benefit of Packard Park Commission by Ordinance No. 208 adopted in February, 1913. In February, 1934, Ordinance No. 208 was amended by Ordinance No. 2683 whereby the property was purchased for the city; removed from the control of the Packard Park Commission and placed under the jurisdiction of the Public Service Director of the City. A reinforced concrete swimming pool with bathhouse and filtration facilities, denominated as the Warren Municipal Swimming Pool was constructed and completed some time in 1934 and was open to the use of the general public without discrimination as to race or color during the successive summer seasons from the time of its opening to the year 1946. However, in the year 1946 as appears from the record, difficulties arose concerning the use of the pool by members of the negro race. The testimony of the mayor of the city of Warren under cross-examination is illuminating on this subject and is in part as follows:

"Q. Directing your attention to the opening of the swimming pool for the season of 1946 was there any discussion between you and a representative of the colored people as to the use of the swimming pool by them?

A. Yes sir.

      *        *        *      .*      *

Q. What was the substance of the discussion?

A. That some arrangement might be made whereby we could arrive at a date or some compromise as to the use of the pool because the pool the year before had been closed, because of this particular situation arising.

Q. At first I believe you took the position that the swimming pool should be open for all citizens regardless of all races or creeds?

      *  .     *       *       *      *

A. I wanted to open the swimming pool for use of the public. I got the legal opinion from Mr. Del Bene that under the laws of Ohio I could—there was no way we could open it with discrimination and we opened it under that basis.

Q. In other words, as I get it, you got the opinion from Mr. Del Bene the city solicitor?

A. That's right.

Q. To the effect that there was no way to open the pool unless you opened it to all citizens?

A. That's right.

Q. And that was your position?

A. That's right."

It appears further that during the swimming season of 1946 a number of white citizens who objected to swimming in the pool with persons of the negro race, started going to Niles, Ohio and other adjoining cities to swim in their pools. The negro citizens were then approached through such organizations as the Warren branch of the N. A. A. C. P., the Warren Urban Society and requested to agree to restrict their use of the swimming pool to one day per week which they declined to do. Thereafter on July 16, 1946 the city council of Warren enacted Emergency Ordinance No. 3518 authorizing the Public Works Director to lease the pool for the swimming season of 1946 and 1947. The pool was not leased during the swimming season of 1946 but was leased for the season of 1947 to the defendant, Veterans Swim Club. This is a **private corporation not for profit,** evidently formed for the purpose of taking over the operation of the swimming pool since its charter is dated Jan. 20, 1947 and its constitution was adopted June 3, 1947, three days before it acquired the lease from the city.

The purposes of the corporation set forth in its constitution are as follows:

"(a) To incorporate swimming in the recreation program of veterans and their families;

(b) To provide a place for swimming and recreation for **veterans of the United States Armed Forces, all wars, and their families."**

Under the membership clause appears the following:

"(a) All prospective members shall be recommended for membership of the club.

(b) All members must be **veterans of the United States Armed Forces** and **relatives of a veteran.**

(c) All new members shall have the status of social members for a period of one year;

(d) All applicants must pass a **two-thirds vote** (by secret ballot) **of the Executive Board."** (all emphasis ours.)

On June 6, 1947 the City of Warren leased the Warren Municipal Pool to the Veterans Swim Club for the season of 1947 without any consideration other than the provision in the lease contained in Item 15 as follows:

"The successful bidder agrees to pay to the City of Warren on a **bi-weekly rental equal to ten percent of the gross receipts collected by the successful bidder, incident to the operation and maintenance of such leased premises."**

Other covenants are:

"The successful bidder shall keep proper books of accounts and records and the city shall have the right to audit such books and records as it deems necessary by its proper officers."

"The City shall furnish all the buildings and equipment connected with the area and now located on the premises, described in Ordinance No. 3518-46 except the personnel needed to manage and conduct the said premises."

"The City **reserves the right to make all the necessary repairs and alterations as it deems necessary during the term of the lease.**" (emphasis added.)

The record indicates that after the lease was executed the Veterans Swim Club through its agents and servants started circulating applications for membership at public schools, business places and private clubs approaching and inviting only persons of the Caucasian race. The plaintiffs herein attempted to secure membership application blanks but were unable to do so.

When the swimming pool was opened for the season of 1947 the plaintiffs presented themselves to the Warren Municipal Swimming Pool and attempted to gain admittance but were refused. The record also shows that all of the negroes of the city who attempted to gain admission to the pool were refused even though a number of them were World War Veterans who were well qualified under the provisions of the Constitution adopted by the Veterans Swim Club as veterans who had been honorably discharged from service. It is a peculiar fact appearing of record that applications of these negro veterans would be received in some instances together with the required fees and then later the applications and the fees were returned without explanation. At no time were any negro veterans or their families allowed the use of the swimming pool by the Veterans Swim Club.

There is evidence showing that before and after these incidents, committees of negro citizens, called upon the city officials for the purpose of securing permission to use the facilities of the swimming pool but their efforts were unavailing. Thereafter on July 24, 1947, a petition was filed by plaintiffs for a declaratory judgment and mandatory injunction and on August 18, 1947, an amended petition for declaratory judgment, mandatory injunction and equitable relief was filed.

It is the claim of the plaintiffs that the lease and ordinance under which it was enacted, are null and void as being con-

trary to the Constitution and laws of the United States and the State of Ohio, and further—

"that the lease arrangement as to the use of the Warren Municipal Swimming Pool was arbitrarily, maliciously and. capriciously done by defendants herein in order to exclude negro citizens, taxpayers and residents illegally from the use of said swimming pool and that negro citizens, taxpayers and. residents are being excluded by the defendant lessees, The Veterans Swim Club"

all of which it is claimed constitutes an illegal and unjust. exclusion of the use of public property and facilities on the ground alone of race and color.

As heretofore stated, the common pleas court denied the plaintiffs an injunction and held that the plaintiffs were not. entitled to relief by way of a declaratory judgment or injunction.

The plaintiffs contend that the question presented in this. action is:

"Can a municipality by leasing a swimming pool constructed with public funds to a corporation not for profit, relieve itself of the constitutional obligation to afford colored citizens equal rights with those of white citizens in the use of recreational. facilities thereby provided?"

The defendants claim that the question presented is "whether or not a municipality has a right to lease property when it is determined that it is no longer needed and is being operated at a loss?"

We shall consider both questions in the course of this: opinion.

In order to arrive at the intent and purpose of the city in relation to the lease in question, the facts and circumstances surrounding the transaction must be scrutinized. The history of events disclosed by the record is such as to lead to the inevitable conclusion that the real purpose of the lease to a private club, however it may have been disguised, was to exclude colored people from the use of this recreational facility, acquired and procured by the use of public funds. derived from the municipality and from the United States Government.

In piercing superficial forms to view the substance it clearly appears from the conferences had with public officials before the legislation authorizing the lease was adopted in 1946

that efforts were first made to reach an agreement whereby there would be a segregated use of the facilities based alone upon racial distinctions. When these attempts of settlement by agreement failed the ordinance providing for a lease to a private club was adopted the Veterans Swim Club was organized for the purpose of securing the lease for the alleged benefit of veterans of "all wars of the United States." The consideration for the lease was nominal, being merely a percentage of the gross income derived from proceeds of the operation of the pool thus requiring no initial outlay or expenditure by the corporation and no fixed sum by way of rental. There was no responsibility placed upon the lessees to maintain the pool. On the contrary all maintenance and repairs by the terms of the lease are the responsibility of the city. Despite the fact that this was ostensibly for the use of veterans of all wars of the United States, veterans who were colored were not permitted either membership in the club or the use of the pool. The provisions of the Constitution of the Veterans Swim Club adopted three days before the lease was signed, were such that the membership could be controlled by an executive committee by secret ballot. The constitution of the association contains no provision either for selecting the executive committee or identifying its members. These and other facts and circumstances surrounding the entire transaction indicate a confirmed and determined policy to exclude the plaintiffs and those similarly situated from the use of the pool and its facilities on the sole ground of their race and color.

This case, therefore, presents for our consideration questions relating to the validity of a colorable leasing arrangement of public property by a municipality which has as its purpose the exclusion of persons of a designated race or color in the use and enjoyment thereof. Thus issues of basic importance are raised concerning constitutional guarantees under the Fourteenth Amendment.

Quite recently the Supreme Court of the United States has decided cases involving civil rights concerning enforcement of restrictive covenants based on race or color as violative of constitutional rights in respect of private property. The Supreme Court in the cases there under review, while dealing with private property rather than public property, held in substance that judicial enforcement by state courts of covenants restricting the use or occupancy of real property to persons of the Caucasian race is violative of the equal protection clause of the Fourteenth Amendment. Conceding that the Amendment is directed against State action only and does not reach private conduct, however discriminatory, the

opinions hold that judicial action, even for the enforcement. of private agreements, is State action, and so within the Amendment's field of operation; and that the enforcement of restrictive covenants against certain races is none the less discriminatory because courts will enforce them against any race against whom they are directed, including the white race.

See:

J. D. Shelley, Ethel Lee Shelley, his wife, petitioners v. Louis Kraemer and Fern W. Kraemer, his wife (No. 72)

Orsel McGhee and Minnie S. McGhee, his wife, petitioners, v. Benjamin J. Sipes and Anna C. Sipes, James A. Coon and Addie A. Coon, (No. 87)

Decided May 3, 1948, Supreme Court Advance Opinions, Vol. 92, No. 16, pages 845, 857, incl.

See also:

James M. Hurd and Mary I. Hurd, petitioners, v. Frederic E. Hodge, Lena A. Murry Hodge, Pasquale DeRita et al, (No. 290)

Raphael G. Urciolo, Robt H. Rowe, Isabelle J. Rowe et al petitioners v. Frederic E. Hodge, Lena A. Murry Hodge, Pasquale DeRita et al (No. 291)

Decided May 3, 1948. Supreme Court Law Edit. Advance Opinions Vol. 92, No. 16, pages 857-864 inclusive.

In the case of Shelley v. Kraemer, supra, headnote 5 is as follows:

"5. The action of state courts and of judicial officers in their official capacities, even though taken for the enforcement of private agreements, is state action within the provision of the Fourteenth Amendment that no state shall deny to any person within its jurisdiction the equal protection of the law."

In the instant case we have a constitutional question concerning the use of public property where governmental as well as private discrimination is charged and in our opinion proved by clear and convincing evidence. In this respect our finding of fact is contrary to the finding of the common pleas court where it was held in substance that the city council acted in good faith from motives of economy only. We think such a conclusion is not supported by the evidence in the record before us.

The action of the officials of Warren who are defendants herein together with the conduct of the defendant, Veterans Swim Club, indicates a concerted effort on the part of all of those defendants which is violative of the first section of the Fourteenth Amendment which reads as follows:

"All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty of property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

From the facts here found, it is clear that the Veterans Swim Club, a corporation not for profit, was a mere agent or instrumentality through which the City of Warren operated the swimming pool, at least to the extent that the rights of its citizens to the use of the pool are affected.

As stated by Moore, J., in the very recent case of Lawrence v. Hancock, et al, civil action No. 795, U. S. Dist. Ct. Charleston, W. Va. decided Feb. 11, 1948:

"Justice would be blind indeed if she failed to detect the real purpose in this effort of the City of Montgomery to clothe a public function with the mantle of private responsibility. 'The voice is Jacob's voice' even though 'the hands are the hands of Esau.' It is clearly but another in the long series of strategems which governing bodies of many white communities have employed in attempting to deprive the negro of his constitutional birthright; the equal protection of the laws. See Smith v. Allwright, Election Judge, et al, 321 U. S. 649, 64 S. Ct. 757 (1944); Nixon v. Condon et al (1932) 286 U. S. 73, 52 St. Ct. 484; Clay Rice et al v. Geo. Elmore, (C. C. A. 4, 1947) Fed (2d); Kern v. City of Newton, 100 P. 2d. 709 Kans. 129 A. L. R. 1156."

Paraphrasing certain language in that case the City of Warren said in effect to the Veterans Swim Club:

"Take this swimming pool, operate it properly during one season; pay to us ten percent of the gross income; we will maintain it and repair the property while you are using it; return it to us at the end of the season; establish your own rules, control the membership of your club and the use of the pool by secret ballot so that colored persons cannot belong to the club or use the pool. Return it to us at the end of the season in as good condition and repair as when you took it over, natural wear and tear and damage or destruction by the elements excepted."

The brief of defendants argues the question of whether or not the municipality had authority to enter into a lease agreement covering municipal property and makes the point that there was no formal dedication of this particular public property for use as a swimming pool and further that there was no statutory requirement that this property should be so used when title to it was vested in the city. Likewise, the learned trial judge discusses this question at considerable length to the same effect.

According to our view of the case this question has no particular significance or materiality and certainly is not controlling under the facts here presented. Whether the property was dedicated to public use or not is immaterial. The lease was temporary in character and the property continued to be municipally owned. It might well be emphasized also that not only the funds of the municipality were used in the purchase of the land but the funds of the United States Government were also used in the construction of the swimming pool, thereby demonstrating conclusively its character as public property. We believe that although this question of dedication to public use is susceptible of academic discussion it is not an issue here because the primary question is in respect of plaintiffs' constitutional rights to equality of use and enjoyment of public property irrespective of the fact of dedication. Here we have a set pattern where all of the defendants, municipal officials as well as the Veterans Swim Club have quite obviously conspired to prevent the use by plaintiffs and other colored persons of a public recreational facility. The power to lease does not include the power to discriminate against members of a minority race in the exercise of their constitutional rights.

The city cannot under a technical defense such as is here presented by means of a colorable leasing arrangement having no real substance except as to temporary operation, relieve itself from its constitutional obligation to afford to all citizens equal rights in the use of public property. The facts here show that neither the members of the Swim Club nor any other private persons, contributed toward the acquisition of the land or the construction of the pool. Neither did the members of the swim club have any part in the operation or management thereof until the plan of leasing was hit upon as a means of exclusion on racial grounds.

It is our conclusion therefore that the Veterans Swim Club, a **corporation not for profit** was a mere agent or instrumentality through which the City of Warren operated the swimming pool, ostensibly for veterans of all wars of the United States, but actually only for war veterans of the Caucasian race.

The facts in this case pose a question of constitutional right and privilege which cannot lightly be cast aside by a process of legal legerdemain which has the effect of turning over to a private organization public property for the sole purpose of racial discrimination.

Many cases have been cited as authority for the proposition herein discussed. The case most nearly analogous on the facts is the case of Lawrence v. Hancock, et al, supra. Except that the names of the parties are different and the locale is different, the opinion of the court in that case could well be the opinion in this case. However it is not necessary to rest upon this authority alone. Time and again when issues such as are here determined have been presented to our courts the constitutional provisions of the Fourteenth Amendment have been repeatedly and consistently upheld.

In the case of Lincoln Park Traps v. Chicago Park District et al 55 N. E. (2d) 173, 323 Ill App. 107, decided by the Appellate Court of Illinois, May 2, 1944, it was held:

"A city park board cannot lease a portion of its lands to a private individual, group or corporation, when, by the terms of such lease, the demised land and the facilities located thereon are not available equally to all people."

In that case a lease agreement to a private club similar to the one here in question was held invalid.

In the case of D. E. Kern, pltff, v City Commissioners of the City of Newton, et al, decided by the Supreme Court of Kansas, 151 Kan. Rep. 151, 100 P. (2d) 709, the city officials leased a swimming pool to an individual who denied the use of the swimming pool to a colored man. The first paragraph of the syllabus reads:

"In a proceeding for writ of mandamus to compel city officials and the lessees of a swimming pool to permit plaintiff, a colored man to use the pool the fact that the city has leased the pool to one who was operating it does not relieve the city officials from the obligation to cause the pool to be operated so there will be no discrimination against members of the colored race."

It was held in this case that the city officials could not evade any of their official obligations or take away from the pool any of its characteristics by entering into a lease thereof. See note, 129 A. L. R. 1164.

Counsel for the city in commenting upon the case of Kern v. City of Newton et al, says:

"The city had leased a swimming pool to Hunt and the court relying on Bailey v. Topeka, 97 Kan. 154 (P) 1014, held that the lease between the city and Hunt was nothing more than an arrangement whereby Hunt was to manage the pool for the city. Referring to Bailey v. Topeka the court said: 'It was there determined that nothing was done to take away any of the public features of the park.' "

We note the comments to the same effect in the opinion of the trial court.

According to our view of the facts in this case we could make practically the same statement here. The relationship between the City of Warren and the Swim Club was nothing more than an arrangement whereby the Swim Club was to manage the pool for the city and further that nothing was done here to take away any of the public features of the swimming pool except the Swim Club was given a free hand to operate the pool and to exclude people of the colored race. Such, we think, was the obvious purpose of the entire transaction, when the city was unable in the first instance to persuade colored people to agree to restrict their use of the pool in accordance with the request of the public officials.

Many other cases bearing upon the question of racial discrimination could be cited and quoted at great length. To do this would, however, extend this opinion unduly. In a recent case decided by the Supreme Court of the United States, namely, Cyama et al v. State of Calif. 68 Supreme Ct. 269, the first paragraph of the syllabus covers well, we believe, what should be the attitude of a court in viewing facts such as are presented in this case. The syllabus is as follows:

"In reviewing a case in which federal constitutional rights are asserted, United States Supreme Court must inquire not merely whether those rights have been denied in express terms but also whether they have been denied in substance and effect, and must review independently both legal issues and those factual matters with which they are commingled."

The recent cases of Shelley v. Kraemer et al and McGhee et al v. Sipes, et al; James M. Hurd and Mary I. Hurd v. Frederic E. Hodge et al, Ralph G. Urciolo et al v Frederic E. Hodge et al, supra, and Trustees of Monroe Church of Christ et al v. Perkins, decided May 10, 1948 No. 153, Sup. Ct. of United States, reversing the Ohio Supreme Court decision of March 1, 1947, all of which inhibit the judicial enforcement by state courts of covenants restricting the use or occupancy of real property for reasons of racial discrimination, indicate

the extent to which our law has progressed in upholding the constitutional guarantees contained in the Fourteenth Amendment. In the case of Shelley v. Kraemer, the court said in part:

"The historical context in which the Fourteenth Amendment became a part of the Constitution should not be forgotten. Whatever else the framers sought to achieve, it is clear that the matter of primary concern was the establishment of equality in the enjoyment of basic civil and political rights and the preservation of those rights from discriminatory action on the part of the states based on considerations of race and color. Seventy-five years ago this court announced that the provisions of the amendment are to be construed with this fundamental purpose in mind * * *."

In the instant case we are discussing issues with respect to the use of public property rather than private property. Here governmental discrimination is practised. It is therefore clearly the duty of this court to prevent such discrimination if the issue is properly raised.

There remains for consideration only one further question and that is whether or not this appeal should be dismissed on the ground that this matter is moot. This issue was not raised as a defense in the pleadings either in this court or in the common pleas court. Nor was this question discussed in the briefs of any of the parties filed on the merits of the cause although it was presented by the defendants in oral argument without the citation of any supporting authorities. The record of the proceedings in this case shows that on February 9, prior to the final hearing on the merits, the defendants herein filed a motion to dismiss this appeal for the reason "(1) that the matter is now moot."

In a memorandum in support of the motion to dismiss, the defendants did not cite any authorities but set forth the following statement:

"An examination of the pleadings in this case will show that the ordinance which the appellants herein are endeavoring to have declared void, expired Dec. 31, 1947 and the contract which the city entered into with the Veterans Swim Club has likewise expired. Therefore there is no relief that can be granted the appellants by any decision of this court."

The Court of Appeals of the 7th Appellate District decided the issue thus raised adversely to the claim of the defendants, in a journal entry reading in part as follows:

"This day this cause came on for hearing upon the motion and briefs of appellees to dismiss the appeal, and the briefs of appellants in opposition to said motion, and the court being fully advised in the premises **finds that the appeal should not be dismissed on the ground that the matter is now moot** * * * and that the motion to dismiss should be overruled.

It is therefore ordered, adjudged and decreed that the motion to dismiss the appeal be and is hereby overruled."

This same question was raised in the case of Paul Lawrence .v George M. Hancock et al, supra. The court in that case disposed of the question in the following language:

"The contention of the city that there is no pending controversy upon which to base a suit for a declaratory judgment is without merit. Plaintiff tried on two occasions in successive seasons to obtain admission to the pool and each time was denied that right solely because of his race. He could hardly have done more in an attempt to enforce his constitutional right. But, it is said **the season is now ended and the lease has expired; there is no indication that the city will again lease the pool or that plaintiff will again be denied admission.** In view of my conclusion that the refusal to admit him to the pool was **governmental** and not private action, **there is no basis for this argument. The pool still exists although temporarily closed. If it is open to the public again, plaintiff will be entitled to the rights he asserts.** He has twice been denied these rights. It is the duty of this court on his complaint and the evidence in its support, to declare what his rights are." Morris (Hibler intervenor) v. Williams et al C. C. A. 8, 1945, 149 Fed. (2d) 703." (emphasis ours.)

We think that the principles of law applied by the court to the facts in that case are equally applicable here and that the contention of the city in this case that the question is now moot is without merit. It was stated in open court during this hearing without contradiction that the same Veterans Swim Club had again made inquiry of the city of Warren concerning the use of the swimming pool for the season of 1948. A determination of this suit and a dismissal of the appeal on the ground that the question is now moot would undoubtedly lead once again to the same method and pattern of exclusion and the process of discrimination could again be set in motion. If another suit were commenced it is easily conceivable and quite probable that by the time it would again reach

a reviewing court it would again be argued that the matter was moot for the same reasons and on the same grounds. We think this is a fair and logical deduction from the history of the facts of this case heretofore related as shown by the record.

The persistent efforts of the plaintiff and the colored veterans of the World Wars to secure membership in the swim club; the persistent refusals of their applications for admission despite their undoubted qualifications as war veterans; the efforts to induce plaintiffs to agree to a segreceted use prior to the passage of this legislation; the comments of city officials as shown by the record; the opinion of the city solicitor given to the mayor that the city could not under constitutional guarantees exclude plaintiffs under direct city operation, all support the charges of racial discrimination alleged in the amended petition. In reality the exclusion of the plaintiffs and those similarly affected constitutes governmental action under the guise of private management. **This pool exists as public property even though temporarily closed.** If the pool is again reopened either under a leasing arrangement or directly by the municipality, plaintiffs and those similarly situated have equal rights to its use. (emphasis added.)

In the case of Morris v. Williams et al, 149 Fed. (2d) 703, cited by the court in the case of Lawrence v. Hancock, supra, the court at page 709 in commenting upon a question involving racial discrimination states as follows:

"We cannot say from the facts stated whether the 'policy custom and usage' complained of have been abandoned or not; there is no assurance given in the statement of counsel that such usage and custom may not be resumed at any time, even though presently abandoned. Under these circumstances this court cannot consider the matter and things thus brought to our attention. Since the controversy remains it is the duty of the court to adjudicate the issues presented. **They are not moot and would not be moot even had the changes been made prior to the trial.** United States v. Aluminum Co. of America, 2 Cir. 148 F. (2d) 416, 448; So. Pac. Terminal Co. v. Interstate Commerce Comm. 219 U. S. 498, 515, 31 S. Ct. 279, 55 L. Ed. 310; Federal Trade Comm. v. Goodyear Tire & Rubber Co. 304 U. S. 257, 260, 58 St. Ct. 863, 82 L. Ed. 1326." (emphasis added.)

"Actions or opinions are described as 'moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual, genuine, live controversy, the

decision of which can definitely affect existing legal relations." Borchard, Declaratory Judgments 2nd Ed. page 35.

In support of the text the author cites the following:

"A moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy."

Citing ex parte Steele, 162 Fed. 694, 701 M. D. Ala. 1908.

Many other cases are cited by the author in support of the text. In respect to the matter of construction, Borchard (2d Ed) at page 295 says:

"With the greater use of the declaratory judgment action which marks the twentieth century, and with the ever growing conviction of its practical utility in the solution of legal issues, the policy has changed from one of conservatism to liberality. The Uniform Act like most of the other state statutes provides: 'This act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.' A Federal Court has recently expressed this policy in the following terms: 'The discretion to grant or refuse declaratory relief should be liberally exercised to effectuate the purposes of the Declaratory Judgment Act and thereby afford relief from uncertainty and insecurity with respect to rights, status and other legal relations.'

Citing: Lehigh Coal & Nav. Co. v. Central R. R. of New Jersey 33 Fd. Supp. 362, 365 (E. D. Pa. 1940)."

Sec. 12102-12 GC contained in the chapter on Declaratory Judgments reads precisely the same as the Uniform Act above quoted. It will be observed that the Ohio courts are likewise required to administer and construe the Act liberally with a view to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations.

A comparatively recent case decided by the supreme court of the United States, namely, Porter v. Lee, 328 U. S. 246, May 27, 1946, is considered a leading case on whether or not a question is moot.

One Bevan was sued for forcible entry in the Justice of the Peace Court of Kenton County, Kentucky, to allow the landlord to recover possession of his apartment. The Price Administrator filed in Federal Court an injunction to order the respondent not to prosecute eviction proceedings against Bevan or any other tenant, and to restrain them from violating the rent regulations. The injunction was denied. While the case was in the process of appeal to the Circuit Court of Appeals the state court evicted the tenant. The Circuit Court of Appeals held the question moot. Justice Black, speaking for the supreme court, said:

"We also think the Circuit Court of Appeals erred in holding that the case was moot * * *. Morever, here the Administrator sought to restrain not merely the eviction of Bevan but also that of any other tenant of the landlord as well as other acts in violation of the regulation. * *. * **The issue as to whether future violations should be enjoined was still before the court and was by no means moot.**" (emphasis added.)

Following this same line of reasoning in the case of Miller et al v. Incorporated Town of Milford, 276 N. W. 826, syllabus 14 of which reads as follows:

"The question of the validity of a contract for the construction of a municipal electric power plant was not academic and moot because the contract had been fully performed and work done under the contract had been fully paid for by the issuance of negotiable bonds, where the taxpayers prayed that the town officials should be restrained from doing anything in further attempted performance of the contract; question not being 'moot' if there remains anything on which a decision of the court can operate."

In the case of Southern Pac. Terminal Co. v. Interstate Commerce Comm. 219 U. S. 493, cited in Morris v. Williams, 149 Fed. 2d 416. It was held that a case is not 'moot' where interests of a public character are asserted by the government under conditions that may be immediately repeated, merely because the particular order has expired.

As between the plaintiffs here and the city of Warren and its officials there was at the time of the trial in common pleas court and there exists now, a justiciable controversy respecting rights, status and legal relations concerning the use by the citizens of Warren of the public property here under discussion. With respect to the lease of the Veterans Swim

Club the lease having expired the petition against the defendant, Veterans Swim Club, should be dismissed. The plaintiffs, however, are entitled to a declaratory judgment against the City of Warren and the defendant public officials in order to settle and afford relief from the uncertainty and insecurity with respect to the rights, status and other legal relations of and between the plaintiffs and the City of Warren because of the racial discrimination which has been practiced.

In the instant case there are interests of a public character asserted against a municipal government under conditions that may be immediately repeated. As we have heretofore observed, a pattern of governmental discrimination with respect to public property has been set by the municipal authorities and the plaintiffs are entitled to a declaratory judgment so that there may not be a repetition of such conduct, so long as the swimming pool remains the property of the city.

In conclusion we wish to emphasize that we are not here dealing with social questions involving race relationships nor with the question of whether or not the city might suffer a loss because of the use of this pool by persons of the negro race. If this is the price that must be paid for constitutional guarantees, the price is indeed small enough. It is one thing to pay lip service to the Constitution and another thing to abide by its specific provisions. In this connection we might inquire from whence springs the great zeal to operate this particular recreational facility at a profit to the city? The operation of public parks, playgrounds and other recreational facilities are not ordinarily viewed as a source of pecuniary profit to the municipality. Cities ordinarily provide* parks, playgrounds and other recreational facilities such as the swimming pool in this case, as a means of providing pleasure, recreation and cultural enjoyment for the benefit of all of its citizens without respect to race or color and without hope or expectation of financial profit. Packard Park which adjoins this recreational facility is an example. In practically all of the cities of this country examples could be multiplied where city officials, past and present, have taken pride in furnishing such recreational facilities at the expense of the public either free or for a nominal charge to all and not for profit or pecuniary gain to the municipality.

Holding these views an order may be entered in the form of a declaratory judgment to the effect that the refusal of the Veterans Swim Club to admit plaintiff and other colored persons to the swimming pool was an exercise of governmental power by the City of Warren and as such was in violation of plaintiffs' rights under the Constitution of the

United States. The order may further include an injunction against the defendants, the City of Warren, the duly elected, qualified and acting Mayor and the duly appointed, qualified and acting Public Service and Safety Director of the city, restraining them from again denying the plaintiffs the right to use the swimming pool at any time when the pool is open for public use, under the same terms and conditions as are allowed to all other citizens of Warren and so long as such swimming pool remains the property of the City of Warren. The Veterans Swim Club having had no interest in the controversy since the expiration of its lease the complaint will be dismissed as to the club and its officers.

Decree for plaintiffs. Order See Journal.

A journal entry may be prepared and presented in accordance with this opinion. Exceptions are allowed to all proper parties.

MORGAN, J, concurs.

SKEEL, J, dissents, for the reason that the question of law presented by this appeal is now moot. The ordinance and lease under which a declaratory judgment and injunction is asked by plaintiffs expired prior to the case being filed for trial de novo in the Court of Appeals. **Hagerman v. City of Dayton, 147 Oh St 313.**

If the question were before us, I would concur thoroughly with the statement of the majority of this court that a city in providing recreational facilities for the people within its jurisdiction cannot discriminate on the basis of race or color. All citizens are entitled to equal protection under the law.

I am not convinced, however, that the record establishes bad faith on the part of the public officials of the City of Warren in renting the swimming pool to the Veterans Swim Club. It seems from the record that the pool had been operated at a loss for a number of years and that the city, through its duly elected and qualified council concluded that there were not sufficient funds available to run the pool at city expense. If, in fact, the pool could not be used as a part of the city's recreational facilities and the city council acting within their sound discretion determined to sell it or lease it, under the provisions of §3631 GC they would have the legal right to do so. The sale or lease of such facility or property must have been conducted in absolute good faith and such method cannot be used as a means of avoiding the constitutional obligations of the city to afford all citizens the equal protection under the law.