DECISION
Plaintiff-appellant, Randolph Wilkins, appeals the March 22, 2001 judgment of the Franklin County Court of Common Pleas granting defendants-appellees' motion to dismiss. For the reasons that follow, we reverse.
On December 31, 1997, while on parole from a 1985 rape conviction, Wilkins was indicted by the Summit County Grand Jury for the rape of Shauneeka Mishauna Wilson.[1] Wilkins was returned to the custody of the Department of Rehabilitation and Correction ("DRC") as a parole violator. On August 31, 1998, the case was tried by a jury and, on September 3, 1998, Wilkins was found guilty. On September 11, 1998, Wilkins was sentenced to life in prison and found to be a sexual predator. Wilkins appealed and, on September 29, 1999, the Ninth District Court of Appeals reversed Wilkins' conviction.[2] As a result, the case was remanded to the Summit County Court of Common Pleas. On September 15, 2000, the state dismissed the rape charge against Wilkins.
DRC continued to hold Wilkins as a recommissioned parole violator at the Southern Ohio Correctional Facility ("SOCF"). On October 27, 2000, Wilkins was notified that he was subject to a parole revocation violation hearing to be conducted via video conferencing.[3] On November 14, 2000, Wilkins filed a complaint for injunctive relief and motion for temporary restraining order and a motion for temporary restraining order and permanent injunctive relief, asserting that under Morrissey v. Brewer (1972), 408 U.S. 471, the scheduled revocation hearing by video conferencing would violate Wilkins' right to confront witnesses under theFifth and Fourteenth Amendments of the United States Constitution. On November 16, 2000, appellees filed a memorandum contra to Wilkins' motion for temporary restraining order. On November 17, 2000, the trial court conducted an oral hearing to allow both Wilkins and appellees to present their arguments. On December 5, 2000, the trial court denied Wilkins' motion for temporary restraining order.
On November 20, 2000, appellees conducted the parole revocation hearing. Wilkins, his counsel, and the hearing officer were present at SOCF. The parole officer and the state's witnesses were present and testified via video from Akron, Ohio. On December 8, 2000, the parole board determined that Wilkins violated his parole.
On December 15, 2000, Wilkins filed an amended complaint for injunctive relief alleging that the use of the video conferencing during his parole revocation hearing deprived him of the right to confront the witnesses under the Fifth and Fourteenth Amendments of the United States Constitution, and as explained in Morrissey. On December 21, 2000, appellees filed a motion to dismiss under Civ.R. 12(B)(6). On March 7, 2001, the trial court granted appellees' motion to dismiss stating that, "[t]hrough the use of video-conferencing equipment, plaintiff was able to view and question the witnesses, despite his not being physically present in the same room. Also, the due-process and confrontation rights in a parole-revocation hearing do not rise to the level of those in a trial proceeding." (Decision granting defendants' motion to dismiss, filed December 21, 2000, dated March 7, 2001, at 4.) As such, the trial court determined that Wilkins' complaint and amended complaint were moot and therefore terminated the case. It is from the March 22, 2001 journal entry that Wilkins appeals, raising the following two assignments of error:
FIRST ASSIGNMENT OF ERROR
 THE TRIAL COURT ERRED IN GRANTING APPELLEES' MOTION TO DISMISS PURSUANT TO CIV. R. 12(B)(6).
SECOND ASSIGNMENT OF ERROR
 [THE] TRIAL COURT ERRED IN FINDING MR. WILKINS' COMPLAINT FOR INJUNCTIVE RELIEF MOOT.
In his first assignment of error, Wilkins claims the trial court erred in granting appellees' Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted.
Dismissal of a claim pursuant to Civ.R. 12(B)(6), is appropriate only where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim, which would entitle him to relief. York v. Ohio State Highway Patrol (1991), 60 Ohio St.3d 143, 144; Lin v. Gatehouse Constr. Co. (1992), 84 Ohio App.3d 96, 99. A court must presume all factual allegations contained in the complaint to be true and make all reasonable inferences in favor of the non-moving party. Mitchell v. Lawson Milk Co. (1988), 40 Ohio St.3d 190, 192. However, the trial court need not presume the truth of conclusions unsupported by factual allegations. Schulman v. Cleveland (1972), 30 Ohio St.2d 196,198. As an appellate court, we must independently review the complaint to determine if dismissal was appropriate. McGlone v. Grimshaw (1993),86 Ohio App.3d 279, 285.
In this case, we must examine the minimal due process rights that are afforded a parolee during a parole revocation hearing. While we recognize that the rights afforded in a criminal proceeding are not the same rights available in a parole revocation hearing, the parole revocation hearing can result in a loss of the parolee's liberty interest, thus entitling the parolee to certain due process rights. In Morrissey, the United States Supreme Court held that with respect to a parole revocation hearing:
 * * * Our task is limited to deciding the minimum requirements of due process. They include (a) written notice of the claimed violations of parole; (b) disclosure to the parolee of evidence against him; (c) opportunity to be heard in person and to present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses (unless the hearing officer specifically finds good cause for not allowing confrontation); (e) a `neutral and detached' hearing body such as a traditional parole board, members of which need not be judicial officers or lawyers; and (f) a written statement by the factfinders as to the evidence relied on and reasons for revoking parole. * * * Id. at 488-489.
Here, in the amended complaint for injunctive relief filed on December 15, 2000, Wilkins alleged that, as a parolee, his right of confrontation guaranteed under the Fifth and Fourteenth Amendments of the United States Constitution, and Section 10, Article I, Ohio Constitution, was violated by the use of video conferencing at his parole revocation hearing. Specifically, Wilkins alleged that, under Morrissey, "a person who has given adverse information on which parole revocation is to be based is to be made available for questioning in his presence" (amended complaint, paragraph 7), and that if appellees are permitted to revoke his parole based on the unconstitutional hearing, he will suffer "great and irreparable harm and unlawful restraint of liberty." (Amended complaint, paragraph 17.) Additionally, Wilkins alleges that: (1) the use of video conferencing violated DRC's rules, as set forth in Ohio Adult Parole Authority Violation Sanction Process Policy 501-27, Section D(1)(q), which requires the hearing officer to permit the offender to confront and cross-examine witnesses (amended complaint, paragraph 9); (2) that the way the cameras were situated prevented Wilkins from making eye contact with the witnesses (amended complaint, paragraph 10); (3) that the video camera froze several times, thereby preventing Wilkins and the hearing officer from observing the demeanor of the witnesses (amended complaint, paragraph 11); (4) that by using the video conferencing, the fact-finder was unable to observe the demeanor of the witnesses (amended complaint, paragraph 12); and (5) that appellees did not show good cause for use of the video conferencing. Appellees admitted at the November 17, 2000 temporary restraining order hearing that "'[t]here's no specific reason why [we are using video conferencing in] this case as opposed to any other case * * * It's just technology the department would like to use * * *.'" (Amended complaint at paragraph 15).
Wilkins argues that since the minimal due process requirements of Morrissey were not met, he is entitled to a new parole revocation hearing in accordance with those minimal due process requirements. Specifically, Wilkins argues that the use of video conferencing does not amount to in-person presence and that the hearing officer did not show good cause denying his right of confrontation. In response, appellees argue that Wilkins' right to confront adverse witnesses was not violated by use of video conferencing when that right could be completely eliminated under Morrissey if the hearing officer finds good cause to prevent such confrontation. As alleged in Wilkins' amended complaint, appellees conceded at the temporary restraining order hearing that there was no specific reason for using the video conferencing; that they simply wanted to test new technology. The trial court held that a parolee has no right to confront witnesses in person at a parole revocation hearing, as does a criminal defendant, and that the use of video conferencing allowed Wilkins the opportunity to view and question the witnesses, although he was not physically present in the same room as the witnesses.
Applying Morrissey to the facts alleged in the amended complaint, it appears that Wilkins has stated a claim that certain of the due process requirements guaranteed to an alleged parole violator at a parole revocation hearing were not observed. Wilkins has alleged that at the parole revocation hearing, his opportunity to be heard and his right to confront witnesses were not satisfied pursuant to Morrissey.
However, the right to confront witnesses at a parole revocation hearing is not an absolute right. For example, if the hearing officer determines that a witness would be subject to harm if his identity were disclosed, then the hearing officer can find that the parolee has no right to confrontation or cross-examination. Id. at 487. However, there is no allegation that any such finding of good cause for depriving Wilkins of the right to confront adverse witnesses was made here. Appellees admitted to using video conferencing only because the department wanted to test new technology. The absence of any apparent good cause coupled with Wilkins' allegations that the camera was positioned in such a way to prevent Wilkins and his counsel from making eye contact with the witnesses, along with the camera freezing on several occasions, thereby preventing Wilkins and the hearing officer from observing the demeanor of the witnesses is sufficient to state a claim that the procedure used did not meet the minimal due process requirements as set forth in Morrissey.
In summary, after reviewing the factual allegations contained in Wilkins' amended complaint, and making all reasonable inferences in favor of Wilkins, we determine that Wilkins has set forth sufficient factual allegations to support a claim against appellees. See Doe v. Carpenter (June 08, 2000), Richland App. No. 99-CA-78, unreported; Burton v. Haas (Mar. 7, 1990), Hamilton App No. C-890077, unreported. In view of all the allegations set forth in Wilkins' amended complaint, we cannot say as a matter of law that there is no set of facts under which Wilkins would be entitled to relief. Conley v. Gibson (1957), 355 U.S. 41. Accordingly, Wilkins' first assignment of error is well-taken and is sustained.
In his second assignment of error, Wilkins argues that the trial court erred in rendering his complaint and amended complaint moot. Specifically, Wilkins contends that live controversy exists between the parties as to the constitutionality of his parole revocation hearing.
In Culver v. City of Warren (1948), 84 Ohio App. 373, paragraph six of the syllabus, the Court of Appeals for Trumbull County held that "[a]ctions or opinions are `moot' when they are or have become fictitious, colorable, hypothetical, academic or dead, and their distinguishing characteristic is that they involve no actual, genuine, live controversy the decision of which can definitely affect existing legal relations." This court has held that "[a] `moot case' is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason, cannot have any practical legal effect upon a then existing controversy.'" (Citation omitted.) "Courts do not concern themselves with controversies that are not justiciable." Davies v. Columbia Gas Elec. Corp. (1946), 47 Ohio Law Abs. 225, 228, reversed on other grounds (1949), 151 Ohio St. 417; see, also, Central Motors Corp. v. Pepper Pike (1983), 9 Ohio App.3d 18, 19 ("[m]oot cases are dismissed because they no longer present a justiciable controversy. The requested relief has been obtained, it serves no further purpose, it is no longer within the court's power, or it is not disputed"). Given our disposition of Wilkins' first assignment of error, Wilkins' claims are not moot. Here, if Wilkins succeeds in proving a constitutional violation, his remedy is a new parole revocation hearing. State ex rel. Johnson v. Ohio Adult Parole Auth. (2000), 90 Ohio St.3d 208, 209. As such, Wilkins' second assignment of error is well-taken and is sustained.
For the foregoing reasons, we find that the trial court erred in dismissing Wilkins' complaint. Our decision, however, does not preclude the future filing of a motion for summary judgment or the trial court's consideration of such motion. Accordingly, we reverse the judgment of the Franklin County Court of Common Pleas, and remand for further proceedings consistent with this decision.
PETREE and McCORMAC, JJ., concur.
McCORMAC, J., retired of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.
[1] The alleged rape occurred on or about July 25, 1997. Wilson was ten years of age at the time.
[2] The Summit County Court of Appeals found that the trial court erred in admitting testimony concerning Wilkins' 1985 rape conviction. State v. Wilkins (Sept. 29, 1999), Summit App. No. 19315, unreported. The court held that the testimony did not meet the requirements of Evid.R. 404(B) or R.C. 2945.59 and, as such, was inflammatory and prejudiced Wilkins. Id.
[3] Wilkins was informed that it was alleged he committed the following violations: (1) he had sexual relations with Wilson who was ten years old at the time of the encounter; (2) he changed his residence without permission of his parole officer; (3) he failed to report to his parole officer; (4) he had contact with a female under the age of 21 without permission of his parole officer; (5) he operated a motor vehicle in which a female was the passenger, without the permission of his parole officer; and (6) he was in the state of Louisiana without the permission of his parole officer.