[Cite as *Schierbaum v. Ohio Dept. of Edn.*, 2024-Ohio-1196.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

DAVID SCHIERBAUM

    Appellant

    v.

OHIO DEPARTMENT OF EDUCATION

    Appellee

C.A. No.    2023CA0029-M

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF MEDINA, OHIO
CASE No.    22CIV0560

DECISION AND JOURNAL ENTRY

Dated: March 29, 2024

STEVENSON, Judge.

{¶1}    Plaintiff-Appellant David Schierbaum appeals from the judgment of the Medina County Court of Common Pleas affirming the resolution of Defendant-Appellee Ohio State Board of Education ("Board") that denied Mr. Schierbaum's application for a three-year pupil activity permit and ordered that he be permanently ineligible to apply for any license, permit, or certificate issued by the Board. For the reasons set forth below, we affirm.

I.

{¶2}    Mr. Schierbaum was the assistant girls' volleyball coach at Gilmour Academy ("Gilmour") from the fall 2011 season through part of the 2016 season. He was terminated from this position on October 2, 2016. His pupil activity permit that had been active during the 2015-2016 season expired in June 2017. Mr. Schierbaum also owned an athletic training facility called M.A.Q.

{¶3} Mr. Schierbaum filed an application on May 22, 2018, for a three-year pupil activity permit. On February 20, 2020, the Board sent Mr. Schierbaum a Notice of Opportunity for Hearing ("Notice") by certified mail. The Notice informed Mr. Schierbaum that the Board intended to deny or permanently deny his pending application for a number of listed reasons involving his activities with a student on the volleyball team ("Student 1").

{¶4} In addition, the Notice informed Mr. Schierbaum of his right to a hearing on the matter and explained the administrative procedures governing an appeal. The Notice also outlined the potential penalties that could be imposed, i.e., limitation, suspension, revocation, denial, permanent revocation, permanent denial of credentials.

{¶5} On February 25, 2020, the Board received a request from Mr. Schierbaum for a hearing. The next day, the Board sent Mr. Schierbaum a certified letter acknowledging his request and informing him that the initial hearing, scheduled for March 9, 2020, had been postponed, but that he would be receiving notice of a pre-hearing telephone conference. Thereafter, the Board held in abeyance all administrative hearings due to the COVID-19 pandemic beginning in March-April 2020. In-person hearings did not commence again until September 2021.

{¶6} On February 18, 2021, the Board's hearing officer scheduled a pre-hearing telephone conference, noting that the Board had begun to schedule hearings virtually, but not in-person, due to ongoing concerns about the COVID-19 pandemic. The parties agreed to a virtual hearing that would be held on May 18, 2021, with a practice session taking place on May 7, 2021. During the practice session, Mr. Schierbaum withdrew his agreement to a virtual hearing. Over the Board's objection, the hearing officer canceled the virtual hearing and the parties agreed to an in-person hearing on December 1 and December 2, 2021.

{¶7} The hearing took place as scheduled at the Ohio Department of Education. During the hearing, the Board presented sworn testimony from the head coach of the girls' volleyball team, the school's athletic director, one of Student 1's classmates (Student 16), a police detective who investigated the incidents for any evidence of a crime, several school administrators, and cross-examination testimony from Mr. Schierbaum. Mr. Schierbaum did not testify in his case in chief, but Student 1 and Student 1's mother testified in his defense. The parties' exhibits were admitted into evidence. Certain of the State's exhibits and all of Mr. Schierbaum's exhibits were admitted under seal to protect student confidentiality.

{¶8} On January 20, 2022, the hearing officer issued a report and recommendations requesting that the Board deny Mr. Schierbaum's application for a three-year activity permit and order him to be permanently ineligible to apply for any license issued by the Board and not permitted to hold any position in any school district in Ohio that requires a license issued by the Board.

{¶9} On June 14, 2022, the Board adopted a resolution denying Mr. Schierbaum's application and ordering him permanently ineligible to apply for any license, permit, or certificate issued by the Board for the reasons set forth in the Notice.

{¶10} On July 15, 2022, Mr. Schierbaum appealed to the Medina County Court of Common Pleas. After reviewing the record and the parties' briefs, the trial court affirmed the Board's resolution.

{¶11} Mr. Schierbaum timely appealed to this Court and advances three assignments of error for our review.

II.

**APPELLANT'S FIRST ASSIGNMENT OF ERROR**

**THE OHIO BOARD OF EDUCATION ERRED IN DENYING APPELLANT'S APPLICATION FOR A THREE-YEAR PUPIL ACTIVITY PERMIT, AS THE APPLICATION WAS MOOT AT THE TIME OF THE ADMINISTRATION HEARING.**

**{¶12}** In his first assignment of error, Mr. Schierbaum argues that his pending 2018 pupil activity permit would have expired before the December 2021 administrative hearing, rendering the application moot. As such, he argues that his application should have been dismissed, not denied.

**{¶13}** "Actions are moot when they involve no actual genuine controversy which can definitely affect the parties' existing legal relationship." *Harris v. Akron*, 9th Dist. Summit No. 24499, 2009-Ohio-3865, ¶ 7, citing *Lingo v. Ohio Cent. RR., Inc.*, 10th Dist. Franklin No. 05AP–206, 2006–Ohio–2268, at ¶ 20. "'A moot case is one which seeks to get a judgment * * * upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy.'" *Harris* at ¶ 7, quoting *Culver v. Warren*, 84 Ohio App. 373, 393 (7th Dist.1948).

**{¶14}** Mr. Schierbaum has not demonstrated that the matter is moot. Regardless of whether the three-year period provided for in his requested permit expired, the Board notified Schierbaum within that period that it was considering permanently barring him from applying in the future in addition to denying the pending three-year permit. Mr. Schierbaum's application was submitted in May 2018. The Notice was sent to him in February 2020, within the three-year period, and provides as follows in pertinent part:

> In accordance with Ohio Administrative Code 3301-73-22, Chapter 119 and Section 3319.311 of the Revised Code, the State Board may suspend, revoke or deny a license. ****.

> If the State Board revokes your license or denies your application for a license, the State Board may establish a minimum period of time before you can apply for a new license, *or the State Board may order that you shall be permanently ineligible to apply for any license issued by the State Board and that you shall no longer be permitted to hold any position in any school district in the state that requires a license issued by the State Board.*

(Emphasis added.)

{¶15} The Notice expressly referenced the statutory authority for the potential acts of denying or permanently revoking Mr. Schierbaum's permit. Thus, the Board acted under that authority by seeking to deny his three-year permit application as well as permanently revoke his eligibility to hold any position with a school board. The Board's actions changed the "existing controversy" from the three-year permit Mr. Schierbaum requested to additional consideration of his permanent ability to hold a license. The fact that the "existing controversy" of the hearing changed from the three-year period requested by Mr. Schierbaum to also include his permanent ineligibility rendered the Board's proceedings an actual controversy that had a practical effect on his ability to hold a permit. Therefore, the Board's decision was not moot.

{¶16} Based on the foregoing, Mr. Schierbaum's first assignment of error is overruled.

## APPELLANT'S SECOND ASSIGNMENT OF ERROR

**THE TRIAL COURT ERRED IN AFFIRMING THE OHIO BOARD OF EDUCATION'S DECISION AS ALL OF THE MISCONDUCT ALLEGED OCCURRED BEFORE THE PRESENT APPLICATION AT HAND WAS FILED.**

{¶17} In his second assignment of error, Mr. Schierbaum argues that because his pupil activity permit was never revoked, denied, or suspended due to the incidents that occurred during the 2015-2016 volleyball season, nor was he charged with any crimes, the Board's findings are not supported by the evidence. The Board argues in opposition that Mr. Schierbaum failed to raise this argument in the trial court, and as such, is barred from raising it on appeal.

{¶18}  A review of the record shows that Mr. Schierbaum did fail to raise this argument in the trial court. Mr. Schierbaum's merit brief contains no citation to his assertion of this argument in the lower court.  Therefore, it is being raised for the first time on appeal.

> When reviewing arguments on appeal, this Court cannot consider issues that are raised for the first time on appeal. The Ohio Supreme Court has stated that other than issues of subject matter jurisdiction, reviewing courts do not consider questions not presented to the court whose judgment is sought to be reversed. It is well established that an appellate court need not consider an error which a party complaining of the trial court's judgment could have called, but did not call, to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.

(Internal quotations and citations omitted.) *Harris,* 9th Dist. Summit No. 24499, 2009-Ohio-3865, at ¶ 9.

{¶19}  Based on the foregoing, because Mr. Schierbaum did not raise this issue  in the trial court, he has forfeited it on appeal.  Mr. Schierbaum's  second assignment of error is overruled.

### APPELLANT'S THIRD ASSIGNMENT OF ERROR

**THE EVIDENCE CONCERNING "UNBECOMING CONDUCT" WAS NOT PROVEN BY A PREPONDERANCE OF RELIABLE, PROBATIVE, AND SUBSTANTIAL EVIDENCE**.

### Standard of Review

{¶20}  R.C.119.12(A)(1)[1] governs this appeal and provides as follows:

(A)(1) Except as provided in division (A)(2) or (3) of this section, any party adversely affected by any order of an agency issued pursuant to an adjudication denying an applicant admission to an examination, or denying the issuance or renewal of a license or registration of a licensee, or revoking or suspending a license, or allowing the payment of a forfeiture under section 4301.252 of the Revised Code may appeal from the order of the agency to the court of common pleas of the county in which the place of business of the licensee is located or the county in which the licensee is a resident.

---

[1] This version of the statute was in effect from September 29, 2015, to September 28, 2023. New versions became effective from September 29, 2023 to October 2, 2023, and from October 3, 2023 to the present.

* * *

(M) The court may affirm the order of the agency complained of in the appeal if it finds, upon consideration of the entire record and any additional evidence the court has admitted, that the order is supported by reliable, probative, and substantial evidence and is in accordance with law. In the absence of this finding, it may reverse, vacate, or modify the order or make such other ruling as is supported by reliable, probative, and substantial evidence and is in accordance with law. The court shall award compensation for fees in accordance with section 2335.39 of the Revised Code to a prevailing party, other than an agency, in an appeal filed pursuant to this section.

{¶21} Reliable evidence has been defined as "dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true." *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). Probative evidence is "evidence that tends to prove the issue in question; it must be relevant in determining the issue." *Id.* Substantial evidence is evidence "with some weight; it must have importance and value." *Id.*

{¶22} In determining evidentiary conflicts, common pleas courts are to give deference to the administrative resolution of such conflicts. *Univ. of Cincinnati v. Conrad*, 63 Ohio St.2d 108, 111 (1980). When the evidence before the common pleas court consists of conflicting testimony of approximately equal weight, the common pleas court "must give due deference" to the determination of the administrative body, which, acting as the finder of fact, had the opportunity to determine the credibility and weight of the evidence. *Id.* "[A]n agency's findings of fact are presumed to be correct and must be deferred to by a reviewing court unless that court determines that the agency's findings are internally inconsistent, impeached by evidence of a prior inconsistent statement, rest upon improper inferences, or are otherwise unsupportable." *Ohio Historical Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).

{¶23} This Court's review is narrower in scope:

An appellate court's review of the evidence is more limited than a trial court's. Instead of appraising the weight of the evidence, an appellate court determines

whether the trial court abused its discretion in its examination of the record for reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621 (1993) * * * . However, on questions of law, an appellate court's review is plenary. *Franklin Cty. Sheriff v. Frazier*, 174 Ohio App.3d 202, * * * 2007–Ohio–7001 [10th Dist.].

*Carter v. Ohio State Bd. of Edn.*, 10th Dist. Franklin No. 10AP-1116, 2011-Ohio-2945, ¶ 9. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons* at 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. *Id.*

{¶24} The trial court concluded that the Board's Resolution was supported by reliable, probative, and substantial evidence and was in accordance with the law. The question before us, therefore, is whether the trial court abused its discretion in making that determination.

{¶25} The Notice alleged that Mr. Schierbaum engaged in conduct unbecoming to the teaching profession when he failed to maintain appropriate student-coach boundaries with Student 1 in violation of R.C. 3319.31(B)(1). R.C. 3319.31(B)(1) prohibits an applicant from "[e]ngaging in an immoral act, incompetence, negligence, or conduct that is unbecoming to the applicant's or person's position[.]"

{¶26} The record reflects that the Board's witnesses testified to the following. Mr. Schierbaum had known Student 1 since she was in the sixth grade and coached her in volleyball during her freshman, sophomore, and junior years at Gilmour. Student 1 also trained with Mr. Schierbaum at M.A.Q., and Student 1's mother was employed there. Mr. Schierbaum had a close relationship with Student 1 and her family.

{¶27} Mr. Schierbaum was informed at the time of his employment about the standards for maintaining appropriate student-coach boundaries. At the start of the 2016 volleyball season,

Student 1's junior year, the head volleyball coach documented multiple concerns about Mr. Schierbaum's preferential treatment of Student 1. For example, Mr. Schierbaum conducted private stretching and "stim" (electrical stimulation) therapy on Student 1 out of sight of the team, gave her candy when she was on the bench, advocated for her to get more playing time, and disengaged from his coaching duties when Student 1 was not playing. The head coach confronted Mr. Schierbaum about his concerns and emphasized the importance of maintaining proper boundaries, which Mr. Schierbaum stated he understood.

{¶28} Shortly thereafter, in September 2016, the head coach learned that Mr. Schierbaum had ordered a new volleyball uniform for Student 1 without permission or approval from the athletic director, who oversaw ordering uniforms on a budgetary cycle. The athletic director cancelled the order, but in early October 2016, Mr. Schierbaum came to a game with two new uniforms that he had purchased for Student 1. In mid-September 2016, Student 1 became upset about her lack of playing time during a tournament, and she cried, screamed, and yelled at Mr. Schierbaum and her mother in the parking lot next to the team bus. Mr. Schierbaum was confronted again by the head coach following these incidents, expressing that Mr. Schierbaum's relationship with Student 1 had become a distraction and frustration to the team.

{¶29} Other concerning interactions took place between Mr. Schierbaum and Student 1. During the previous volleyball season, in November 2015, Mr. Schierbaum posted a photo on M.A.Q.'s social media page of him with Student 1 at a Cleveland Cavaliers game. Their faces were close together and Mr. Schierbaum captioned the photo "Literally my favorite." In April 2016, Mr. Schierbaum attended a Justin Bieber concert with Student 1. Some of Student 1's friends also attended the concert, but Student 1 sat next to Mr. Schierbaum in seats several rows in front of her friends.

{¶30} On Student 1's birthday, Mr. Schierbaum, his girlfriend, and another M.A.Q. staff member arranged to send her a singing gorilla-gram and balloons during the school day. Mr. Schierbaum never did that for any other students on the volleyball team. The head of school at Gilmour testified that that such gifts were typically sent by parents, and it was cause for concern that a gift was sent by a coach, even someone that had an outside relationship with the student.

{¶31} Of most concern, on October 1, 2016, Mr. Schierbaum attended a Kanye West concert with Student 1. Six other Gilmour students also attended the concert that night and sat together a couple of rows behind and above Student 1 and Mr. Schierbaum. Student 16 testified that she saw Mr. Schierbaum dancing closely with Student 1 "[l]ike they were touching physically together, so very close together and I would say like somewhat like grinding * * * like the way you would dance with a boyfriend." She also observed them "French kissing." Another student took pictures and videos of Mr. Schierbaum and Student 1 that corroborated Student 16's testimony. Those photos and videos show Student 1 and Mr. Schierbaum standing next to each other while dancing, with Mr. Schierbaum's arm around Student 1's waist while her arm was around Mr. Schierbaum's shoulder. One of the videos shows that their faces were turned toward one another as if they were going to kiss.

{¶32} The record evidence outlined above shows that Mr. Schierbaum treated Student 1 more favorably than other student-athletes and engaged in an openly inappropriate, personal relationship with her despite being repeatedly notified that he needed to maintain appropriate boundaries and despite his acknowledgement of the same. Therefore, the record supports the conclusion that Mr. Schierbaum engaged in a pattern of conduct that violated the appropriate boundaries between a student and coach and was unbecoming to his position in violation of R.C. 3119.31(B)(1). Accordingly, we conclude that the trial court did not abuse its discretion when it

determined that the Board's Resolution was supported by reliable, probative, and substantial evidence and was in accordance with the law.

{¶33} Mr. Schierbaum argues that the Board's evidence was not reliable, probative, or substantial because it was mischaracterized, improper inferences were made, and there were innocent explanations for each of the allegations. To cite a few examples, he claims his girlfriend posted the photo on social media; that Student 1's mother paid for the new volleyball jersey; that he was simply being a good coach when he allowed Student 1 to vent her frustrations when she yelled and screamed at him; and that his girlfriend sent the gorilla-gram with Student 1's mother's consent. He further argues that there was inconsistent testimony; that certain witnesses were motivated by jealousy; that Student 1 and her mother were not uncomfortable with his conduct; that their families were close so their behavior together was not abnormal considering the familial relationship; that no criminal charges were filed; and that some of the conduct occurred outside the volleyball season or the regular school year. In sum, he argues that there were other inferences that could have been drawn from the evidence from which the Board could have concluded that his conduct was not inappropriate and outside the boundaries of a student-athlete relationship.

{¶34} As previously noted, our role is not to examine the weight of the evidence. Nor can we substitute our judgment for that of the trial court absent an abuse of discretion. *Pons*, 66 Ohio St.3d at 621. Even assuming it is possible to arrive at a different conclusion about the evidence in this case, we cannot conclude that the trial court's determination represents such a "perversity of will, passion, prejudice, partiality, or moral delinquency" that necessitates reversal. *Id*.

{¶35} Mr. Schierbaum's third assignment of error is without merit and overruled.

III.

{¶36} Based on the foregoing, this Court concludes that Mr. Schierbaum's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

SCOT STEVENSON
FOR THE COURT

SUTTON, P. J.
CARR, J.
CONCUR.

APPEARANCES:

JOHN C. OBERHOLTZER, Attorney at Law, for Appellant.

DAVE YOST, Attorney General, and ZOE A. SAADEY and KAITLYN M. KACHMARIK, Assistant Attorneys General, for Appellee.