Robinson, J.
 

 This is an action at law for the collection of a real estate broker’s commission. The action is based upon a written contract. The written contract reads:
 

 “Dayton, Ohio, June 3, 1926.
 

 “I hereby agree to trade the propertys known as Exhibit ‘A’ listed on reverse side of this contract in the city of Dayton, county of Montgomery, and state of Ohio. Subject, however, to the following terms: Total loans of $53,800 more or less, & valued at $127,000, leaving an equity more or less of $73,200, and agree to assign all contracts of sale on the above stipulated properties, for the property at N. E. corner of 3rd & Williams St., Dayton, Ohio, known as the J. A. Pryor Bldg., subject to a total loans of $120,000 more or less and valued at $208,-200. The difference in the equities to be paid for in cash, provided a good and sufficient deed of general warranty with release of dower be delivered within 30 days from this date. Purchaser to assume taxes and assessments due and payable after June, 1926.
 
 *148
 
 All rents and insurance to be adjusted as of date of transfer.
 

 “I hereby deposit with The Jos. E. Copp Co. $1,000.00 as part payment and as a guaranty of good faith to pay the balance when the proper papers are delivered.
 

 “Harry J, Jacobs.
 

 “Accepted 5 p. m. June 15, 1926.
 

 “Witness Alma Deis.
 

 “This proposition to be accepted not later than June 15, 1926.
 

 “We hereby accept the above proposition for property described herein, and agree to deliver the proper papers within the time named, also, agree to pay the Jos. E. Copp Co.-per cent, commission upon the sale.
 

 “All post office equipment at an additional cost of $3,000 with clear bill of sale is a part of this transaction.
 

 “J. A. Pryoi\
 

 “Witness Jos. E. Copp.”
 

 The statute of frauds, Section 8621, General Code, was pleaded as a defense to the action. Section 8621 reads: “No action shall be brought whereby to charge the defendant, upon a special promise, to answer for the debt, default or miscarriage,' of another person; nor to charge an executor or administrator upon a special promise to answer damages out of his own estate; nor to charge a person upon an agreement made upon consideration of marriage, or upon a contract or sale of lands, tenements, or hereditaments, or interest in, or concerning them, nor upon an agreement, promise or contract to pay any commission for or upon the sale of an interest
 
 *149
 
 in real estate; nor upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing, and signed by the party to be charged therewith, or some other person thereunto by him or her lawfully authorized. ’ ’
 

 Evidence was introduced tending to prove that the defendant below, Harry J. Jacobs, was the first signer on the contract; that, after Jacobs signed the contract it was submitted to J. A. Pryor, out of the presence.of Jacobs, and Pryor, after writing in the words, “All post office equipment at an additional cost of $3,000 with clear bill of sale is a part of this transaction,” signed it; that thereafter Joseph E. Copp, who was the Joseph E. Copp Company, plaintiff below, out of the présence of both Pryor and Jacobs, wrote in the word “we” in the Pryor acceptance and resubmitted the contract to Jacobs, and Jacobs verbally accepted it; that thereupon, in the presence of Jacobs, Copp noted the acceptance on the contract, by writing below the signature of Jacobs the following words: “Accepted 5 p. m. June 15, 1926.”
 

 There was no evidence to the effect that Jacobs at the time knew that Copp was writing such words, or any words, on the contract, or that he specifically authorized Copp to write anything on the contract. Jacobs denied knowledge of such writing. There was evidence tending to prove a general authority in Copp to sign real estate, contracts for Jacobs.
 

 Evidence was also introduced tending to prove that at a subsequent date an exchange of the properties of the parties to the above contract was
 
 *150
 
 effected upon a subsequent written contract and upon a similar, if not substantially the same, basis as indicated in the above contract, without the intervention of Copp.
 

 A motion to direct a verdict for the defendant was made both at the close of plaintiff’s case and at the close of all the evidence. Both were overruled. A verdict was rendered for the plaintiff. Motion for new trial was overruled, and judgment rendered for the plaintiff upon the verdict. The judgment was affirmed by the Court of Appeals.
 

 The jury evidently believed the evidence of Copp, and, for the purpose of this review, we must do the same. The question then is, first, whether the contract, as supplemented by the parol evidence, constitutes an agreement, promise, or some memorandum or note thereof, in writing, signed by the parties to be charged, to wit, by Jacobs, to pay a commission to the Joseph E. Copp Company; second, if it does constitute such a promise in writing, and is dependent upon the words written after the signature of Jacobs by Copp, does a general authority in an agent to act for the principal include an authority in the agent to bind the principal by the execution, in his representative capacity, of a contract between the principal and the agent? third, is there any significance, in the application of the statute of frauds in respect to the maintenance of an action for payment of a commission to a broker, in the fact that the parties to the contract of exchange of real estate actually made the exchange upon the terms of the contract?
 

 The purpose of the enactment of the statute was to prevent fraud and perjury, and to accomplish that
 
 *151
 
 purpose the Legislature took away from brokers and others claiming a commission for or upon the sale of an interest in real estate the right to maintain an action therefor unless an agreement or memorandum in writing to pay such commission has been signed by the party sought to be charged. The Legislature did not qualify its inhibition.
 

 There is no claim made that Pryor, by signing the instrument, “agreed to pay the Jos. E. Copp Co. -per cent, commission upon the sale,” had authority to or did bind Jacobs; but it is claimed that, because Jacobs orally accepted the acceptance or counter offer of Pryor, containing the added provision as to the post office equipment, and also containing an agreement upon the part of Pryor to “pay -per cent, commission” to the Joseph E. Copp Company, such oral acceptance, plus the general agency of Joseph E. Copp, plus the fact that the words, “Accepted 5 p. m. June 15, 1926,” were' written on the contract by Copp in the presence of Jacobs, where he could have seen the writing, but without any evidence that he did see it or know what was written, plus the fact that the parties to the exchange contract did exchange the properties, or some of them, upon similar terms, Jacobs thereby promised in writing to pay the Joseph E. Copp Company a commission, and that the Joseph E. Copp Company could by parol prove the per cent, or price promised to be paid by proof of the reasonable value of such service.
 

 Upon the first proposition, this court, in the case of
 
 Kling, Admr.,
 
 v.
 
 Bordner,
 
 65 Ohio St., 86, 61 N. E., 148, held: ‘ ‘ The memorandum in writing which is required by the statute of frauds (Section 4199, Ee
 
 *152
 
 vised Statutes) is a memorandum of the agreement between parties, and it is not sufficient unless it contains the essential terms of the agreement, expressed with such clearness and certainty that they may be understood from the memorandum itself, or some other writing to which it refers, without the necessity of resorting to parol proof.”
 

 While it cannot be said that there is no conflict of decision in other jurisdictions upon the subject of supplementing the writing with parol evidence, the far greater number of jurisdictions adhere to the rule announced in the above ease, and, generally, although not quite universally, hold that the price must appear either in the writing signed by the party to be charged or some other writing to which the signed writing refers.
 

 The broker is here undertaking to recover upon a writing which, given its most favorable interpretation toward the broker, amounts only to a promise to pay something for the service. It is but a promise to pay a-per cent, commission. The amount of the recovery could only be determined by parol proof, either of a parol agreement as to the per cent, or parol proof of reasonable value.
 

 This court in the case above referred to used the language “without the necessity of resorting to parol proof” advisedly, since it cited both text and case law to support that proposition. The overwhelming weight of authority still supports that decision. We are not disposed to modify the rule.
 

 Upon the second proposition, the very nature of the relationship of principal and agent contemplates a representation of the principal by the agent to some one other than the principal, and does not con
 
 *153
 
 template a representation of the principal to himself nor a transaction between the principal in his own proper person and the agent in his own proper person. Such a transaction necessarily excludes the one from representing the other.
 

 A general authority in the agent to sign for his principal cannot be extended to empower the agent, by virtue of such general authority, to in his representative capacity execute for his principal a contract with himself in his own personal capacity. To hold otherwise would open a wider door to fraud than the one the Legislature sought to close by the statute in question.
 

 The only theory upon which the words, “Accepted 5 p. m. June 15, 1926,” found beneath the signature of Jacobs, could be construed to be a promise in writing of Jacobs, signed by Jacobs, to pay a commission to Copp, would be that they were written there with the present purpose of adopting the signature appearing above the words as the signature to the words, and such purpose must have been the purpose of Jacobs as distinguished from the purpose of Copp. Such a theory could be sustained only by proof that they were written with the full knowledge of Jacobs, and with his consent, express or implied, under such circumstances as would make Copp, in the act of writing the words, the instrument of Jacobs, performing the will of Jacobs.
 

 The evidence does not disclose any such situation. At most it but discloses that Copp wrote the words upon the contract under such circumstances that Jacobs could have discovered that he was writing upon the contract, and perhaps could have discovered what he was writing there.
 

 
 *154
 
 With reference to any injustice resulting from the operation of the statute, that is a subject which is peculiarly a legislative one. Every statute of fraud contemplates the existence of a cause of action, which, but for the inhibition of the statute, might be maintained. Presumably the Legislature weighed the evil it sought to cure by the enactment against the evil which might result from the enactment. It was within its province in so doing.
 

 In an action at law by the broker for a commission for services in effecting a sale of real estate, the fact that the parties to the sale consummated the sale according to the contract in no way tends to abrogate the rigor of the statute.
 

 The judgments of the courts below will be reversed, and final judgment entered for the plaintiff in error.
 

 Judgment reversed and final judgment for plaintiff in error.
 

 Marshall, C. J., Kinkade, Jones, Matthias, Day and Allen, JJ., concur.