OPINION
{¶ 1} Defendant-third-party plaintiff-appellant, Ohio Central Railroad ("appel-lant"), appeals from the January 31, 2005 judgment entry of the Franklin County Court of Common Pleas. This entry incorporates the trial court's August 23, 2004 decision granting summary judgment in favor of third-party defendant-appellee Norfolk Southern Railway ("appellee"), and against appellant. Appellee filed motions to dismiss the appeal and for attorneys' fees.
 {¶ 2} The relevant procedural and factual history follows. Matthew Lingo ("Lingo"), the plaintiff below, was an employee of appellant. On May 15, 2002, while working at appellant's rail yard in Columbus, Ohio, Lingo slipped while attempting to assemble a train and board a moving flatbed railcar owned by third-party defendant-appellee Norfolk Southern Railway ("appellee"). Lingo fell to the ground, and sustained severe injuries when the railcar ran over his left leg.
 {¶ 3} After an initial filing and a voluntary dismissal, Lingo refiled his complaint on November 25, 2003. Therein, he brought claims against appellant alleging violations of the Federal Employers' Liability Act ("FELA"),[1] violations of the Federal Safety Appliance Act ("FSAA"),[2] and common law wrongful discharge. Appellant filed a third-party complaint against appellee, third-party defendant Vogt Power International, Inc., and CSX Transportation, Inc. Lingo later voluntarily dismissed his claims against the latter two third-party defendants. Lingo and appellant filed cross-motions for partial summary judgment as to the FSAA claim. On August 23, 2004, the trial court granted Lingo's motion and denied appellant's motion.
 {¶ 4} On May 5, 2004, appellee filed a motion for summary judgment against appellant on the issues of contribution and indemnification. Among the documents appellee submitted in support of its motion were relevant portions of the depositions of Michael J. Connor ("Connor"), vice-president of appellant; James L. Pinson ("Pinson"), the manager of car accounting for appellee; John D. Sigler ("Sigler"), the manager for car administration for appellee; and Lingo.
 {¶ 5} Connor indicated during his deposition testimony that he believed that appellee was the successor corporation to Conrail. He further testified in his deposition that sometime in 1991 or 1992, appellant and Consolidated Railroad Corporation ("Conrail"), entered into "oral understandings" in which appellant agreed not to send its employees to Buckeye Yard, a rail yard owned by Conrail, for the purpose of inspecting and repairing railcars that were going to be sent to appellant's rail yard. Connor stated that pursuant to this "oral understanding," Conrail, before tendering a railcar to appellant, would inspect outgoing railcars and bring the railcars into compliance with Federal Railroad Administration ("FRA") safety rules and Association of American Railroads ("AAR") interchange rules. Connor testified that appellant never asked appellee whether it intended to honor the oral agreement between appellant and Conrail after appellee took over operations from Conrail at Buckeye Yard.
 {¶ 6} Connor testified that appellant trained its employees with both on-the-job training and written materials. Connor stated that employees were permitted to board and dismount moving railcars. He additionally stated that if a supervisor became aware of an unsafe or inappropriate practice of an employee of the railroad, it was the responsibility of the supervisor to instruct the employee on safe practices.
 {¶ 7} Connor also testified that appellant delivered boilers to Dresden, Ohio, on railcars that lacked necessary safety equipment, such as handholds, due to the nature of the cargo. He testified that a customer such as the Dresden power facility is not normally required to return a delivered railcar to compliance with rules and regulations by replacing safety appliances such as handholds. However, absent a waiver from the federal regulations, appellant is responsible to ensure that a railcar complies with safety standards after a customer has unloaded a railcar and returned it. Connor further testified that when receiving a train from another railroad at an interchange, it is the responsibility of the receiving railroad to inspect the railcar to ensure that it is in compliance.
 {¶ 8} Pinson testified in his deposition that as the manager of car accounting for appellee, he has familiarity with the location of railcars owned by appellee. He testified that the railcar in question originally picked up cargo consisting of boilers in Mobile, Alabama, and delivered the boilers to Dresden, Ohio, on April 25, 2002. The handholds were most likely removed so that the boilers would fit on the railcar. He stated that appellant received the railcar with two "idler cars" on March 21, 2002, and retained the railcar in its possession, or the possession of an affiliated company of appellant, until April 26, 2002. Pinson testified that the "idler cars," which had been traveling with the misrouted railcar were returned to appellee on April 13, 2002, but the railcar itself was not returned until April 26, 2002. On May 13, 2002, appellee sent the railcar to appellant's rail yard.
 {¶ 9} Sigler testified in his deposition that federal law requires that handholds be attached to a railcar so that railroad employees can ride railcars safely. Sigler testified that handholds can be removed to accommodate oversized cargo. According to Sigler, when a railcar has had its handholds removed, it must have an "idler car" attached to each end of the railcar in order to be compliant with federal law for safety purposes. Sigler additionally stated that once oversized cargo is removed, it is the responsibility of the consignee or unloader of the cargo to replace the handholds, or in the alternative, notify the delivering railroad to replace the handholds.
 {¶ 10} Lingo testified in his deposition that he first noticed the railcar in question on May 13 or 14, 2002. The railcar was not listed as one that should be in the rail yard. After notifying his dispatcher, he was instructed to set the railcar aside because the railcar had been misrouted. On May 15, 2002, Lingo's dispatcher ordered him to send the misrouted railcar back to appellee by placing it in the train that was headed to appellee's Buckeye rail yard (the "CBT" train). Lingo stated he began to assemble the CBT train by putting railcars in a certain sequence in order to take the railcar in question back to appellee. Although the railcar lacked handholds, Lingo boarded the railcar the first time successfully while it was moving by placing his feet in stirrups attached to the railcar and holding the flatbed of the railcar. He was then told by another employee to stop the railcar. After the railcar began moving again, Lingo attempted to board the railcar a second time when it was moving, but slipped and was injured.
 {¶ 11} Lingo testified that in the two years he had worked for appellant prior to the injury, that he had only one day of classroom training, been given a CSX rule book, taken two annual tests on rules, and had on-the-job training as part of a three-man crew. Lingo testified that he often worked with flatcars similar to the railcar in question, and that when boarding moving flatbed railcars without handholds, he would jump on the car, placing his feet in the stirrups and lean forward grabbing the top of the railcar with his hands. According to Lingo, he had previously boarded railcars without handholds in front of his supervisors during the course of his employment with appellant.
 {¶ 12} On August 23, 2004, the trial court granted appellee's motion for summary judgment, finding that appellant was entitled to neither contribution nor indemnification from appellee. The judgment entry set forth that the same was not a final appealable order.
 {¶ 13} Appellant and Lingo settled the wrongful discharge claim prior to trial. The case proceeded to trial on the FELA claim with Lingo and appellant as the only remaining parties. The jury returned a verdict in favor of Lingo and against appellant. On January 31, 2005, the trial court entered a judgment upon the jury's verdict, also entered judgment as to all parties and claims, and expressly incorporated therein all interlocutory orders. On February 18, 2005, Lingo filed a notice of satisfaction and release, which stated that the judgment had been satisfied.
 {¶ 14} Appellant timely appealed, and asserts the following five assignments of error:
1. The trial court erred when it granted summary judgment as to third-party defendant Norfolk Southern Railway Company in holding third-party plaintiff Ohio Central Railroad was not entitled to indemnification for breach of contract.
a. The trial court erred in granting summary judgment in favor of third-party defendant Norfolk Southern Railway Company in holding no enforceable oral agreement existed between third-party plaintiff Ohio Central Railroad and third-party defendant Norfolk Southern.
b. The trial court erred when it held that an oral contract to perform pre-interchange inspections on railcars was an agreement not to be performed within one year from its making and was in violation of the Statute of Frauds.
2. The trial court erred when it granted summary judgment as to third-party defendant Norfolk Southern Railway Company in finding third-party plaintiff Ohio Central Railroad was actively negligent in the commission of a tort and holding it had no right of indemnification.
3. The trial court erred in denying summary judgment as to Appellant Ohio Central Railroad in holding the subject railcar was "in use" at the time of the incident.
4. The trial court erred in denying defendant/third-party plaintiff Ohio Central Railroad's motion to continue the trial for the purpose of completing discovery with respect to the issues of indemnification and contribution.
5. The trial court erred in denying defendant/third-party plaintiff Ohio Central Railroad's motion to amend the third-party complaint to add additional parties.
 {¶ 15} Before addressing the merits of appellant's appeal, we must first consider appellee's motion to dismiss and motion for attorneys' fees. The essence of appellee's argument is that because the trial court expressly incorporated all interlocutory orders into the final judgment, and appellant satisfied judgment in favor of Lingo, the satisfaction of judgment rendered all issues raised in the appeal moot. To this end, appellee has emphasized that the trial court's final judgment entry contained the language that "[J]udgment as to all parties and claims is entered accordingly and all interlocutory orders are expressly incorporated herein."
 {¶ 16} In response, appellant asserts that although it satisfied the judgment in favor of Lingo, the appeal with respect to appellee is not moot. Appellant asserts that despite the satisfaction of judgment regarding Lingo's claim against it, it retains a present interest in the subject matter of the appeal regarding its right to indemnification from appellee for judgment entered in favor of Lingo. Appellant asserts that all the interlocutory orders including the order granting summary judgment in favor of appellee, and the orders denying appellant's motion to continue the trial, and the motion to amend the complaint were not appealable until the filing of the final judgment entry, and, therefore, this appeal should be determined on the merits.
 {¶ 17} We begin our analysis by recalling that an order that neither disposes of all claims between the parties nor contains an express determination that there is no just reason for delay is an interlocutory order. Civ.R. 54(B); Kvinta v. Kvinta,
10th Dist. No. 02AP-836, 2003-Ohio-2884, at ¶ 20. An order of a trial court granting summary judgment but not containing Civ.R. 54(B) language that there is no just reason for delay is interlocutory. See Jackson v. Allstate Ins. Co., 2nd Dist. No. 20443, 2004-Ohio-5775, at ¶ 18. When an order of a trial court is interlocutory, the order remains subject to revision or modification by the trial court until and unless the order is certified as suitable for appeal, or the action is finally terminated as to all claims and all parties. Chef Italiano Corp.v. Kent State Univ. (1989), 44 Ohio St.3d 86, 90, 541 N.E.2d 64,693. Once a final judgment is issued terminating a case, all interlocutory orders are merged into the final judgment. Bard v.Society Natl. Bank (Sept. 10, 1998), 10th Dist. No. 97AP-1497. Therefore, an appeal of a final judgment includes both the final judgment itself, and all interlocutory orders merged with it. Ibid. See, also, Horner v. Toledo Hosp. (1993),94 Ohio App.3d 282, 289, 640 N.E.2d 850.
 {¶ 18} The Supreme Court of Ohio has long held that the satisfaction of judgment renders an appeal from that judgment moot. Blodgett v. Blodgett (1990), 49 Ohio St.3d 243, 245,551 N.E.2d 1249. As the court stated:
Where the court rendering judgment has jurisdiction of the subject-matter of the action and of the parties, fraud has not intervened, and the judgment is voluntarily paid and satisfied, such payment puts an end to the controversy, and takes away from the defendant the right to appeal or prosecute error or even to move for vacation of judgment.
Ibid., citing Rauch v. Noble (1059), 169 Ohio St.3d 314, 316, 8 O.O.2d 315, 316, 159 N.E.2d 451, 453, quoting Lynch v.Lakewood City School Dist. Bd. of Edn. (1927), 116 Ohio St. 361,156 N.E. 188, paragraph three of the syllabus.
 {¶ 19} If an appellant fails to obtain a stay of execution or judgment, or fails to obtain a supersedeas bond or its equivalent, and the nonappealing party obtains satisfaction of judgment against the appealing party, the appeal is rendered moot. Kevin O'Brien Assoc. v. Baum, 10th Dist. No. 03AP-1010, at ¶ 8. See, also, Marotta Building Co. v. Lesinski,
11th Dist. No. 2004-G-2562, 2005-Ohio-558, at ¶ 18, Brickmanv. Frank. G. Brickman Trust, 8th Dist. No. 81778, at ¶ 8. Moreover, if an appellant simply voluntarily satisfies judgment, the appellant waives the right to appeal. Brickman, supra, at ¶ 8.
 {¶ 20} Consequently, a court will generally not resolve a moot controversy. Controversy has been defined "[a] disagreement or dispute." Black's Law Dictionary (8 Ed. Rev. 2004) 354. A "controversy" can include many aspects and consist of several controversies. Stratso v. Song (1984), 17 Ohio App.3d 39, 42, 17 OBR 93, 477 N.E.2d 1176. With respect to mootness, we have stated:
Actions or opinions are described as `moot' when they are or have become fictitious, colorable, hypothetical, academic or dead. The distinguishing characteristic of such issues is that they involve no actual genuine, live controversy, the decision of which can definitely affect existing legal relations. * * *. `A moot case is one which seeks to get a judgment on a pretended controversy, when in reality there is none, or a decision in advance about a right before it has been actually asserted and contested, or a judgment upon some matter which, when rendered, for any reason cannot have any practical legal effect upon a then-existing controversy.'
Grove City v. Clark, 10th Dist. No. 01AP-1369, 2002-Ohio-4549, at ¶ 11, quoting Culver v. City of Warren
(1994), 84 Ohio App. 373, 393, 52 Ohio L.Abs. 385, 83 N.E. 2d 82.
 {¶ 21} Both parties argue that the case of Haendiges v.Haendiges (1982), 82 Ohio App.3d 720, 612 N.E.2d 1336, is instructive as to whether the satisfaction of the judgment in favor of the plaintiff renders the appeal moot. In Haendiges,
the plaintiff filed a complaint against various parties, including her former husband and his employer, General Industries, seeking monies awarded her in a previous judgment for spousal support. Because General Industries failed to appear, the trial court entered a default judgment against it. General Industries filed a motion for relief from judgment and a motion to stay execution of judgment. The trial court denied both motions. General Industries then satisfied the entire judgment. After the plaintiff filed a notice of satisfaction of judgment, the trial court dismissed the case with prejudice as to all remaining defendants. Thereafter, General Industries appealed, assigning as error the dismissal with prejudice after it satisfied judgment.
 {¶ 22} In affirming the trial court, the Third Appellate District determined that General Industries lacked standing to appeal the lower court's dismissal entry. The appellate court stated that "the right to appeal can be exercised only by those parties who are able to demonstrate a present interest in the subject matter of the litigation which has been prejudiced by the judgment of the lower court." Id. at 723. The court determined that General Industries lacked standing because it was not appealing either of the judgments that affected it — the default judgment or the denial of the motion for relief from judgment — but had appealed a judgment that affected every party except
General Industries. In the final paragraph of its opinion, theHaendiges court noted that even if General Industries had standing, the appeal would be moot pursuant to the holding inBlodgett v. Blodgett (1990), 49 Ohio St.3d 243,
 {¶ 23} Appellee argues that Haendiges supports granting
the motion to dismiss because, like appellant, General Industries "attempted to gain indemnity via appeal of the judgment," but the court in that case ruled that the satisfaction of judgment rendered the appeal moot.[3] Appellant argues thatHaendiges supports overruling the motion to dismiss because, unlike General Industries, appellant does have a present interest in the subject matter of the case and has been prejudiced by a judgment of the lower court.
 {¶ 24} Both parties' reliance on Haendiges is misplaced. First, the central issue in Haendiges was standing; the issue raised by appellee's motion to dismiss is whether the controversy between the parties to this appeal was rendered moot by appellant's satisfaction of Lingo's judgment against it. Second, a fair reading of Haendiges suggests that the issue of indemnification had not been litigated in the trial court and thus was not an issue on appeal. The Haendiges court merely observed that General Industries appealed the dismissal entry because it speculated that the entry would have negatively affect its right to seek indemnification from a co-defendant. For these reasons, the Haendiges case is insufficiently apposite to be helpful in the resolution of appellee's motion to dismiss.
 {¶ 25} Appellant additionally urges us to overrule the motion to dismiss based on Schiller v. Penn Central Transp. Co.
(C.A.6, 1975), 509 F.2d 263. In Schiller, plaintiff Schiller was a railroad employee injured in the course of employment. Schiller filed a complaint against his employer, Penn Central Transportation Company, and the owner of the railroad track on which he was injured, General Motors. Penn Central and General Motors filed cross-claims against each other. The case proceeded to trial and the jury returned a verdict in favor of the plaintiff against both defendants. The trial court then proceeded to determine the cross-claims between the defendants, finding that the defendants were jointly and concurrently negligent, and that they should bear the judgment in favor of the plaintiff equally. General Motors then appealed both the jury verdict and the judgment on its cross-claim against Penn Central. Penn Central did not appeal. Before General Motors asserted its appeal, a bankruptcy court ordered Penn Central to pay one-half of the judgment, and it did so. During the pendency of the appeal, Penn Central also paid the other half of the judgment, thereby fully satisfying the judgment in favor of the plaintiff. The Sixth Circuit determined that because the judgment to the plaintiff had been satisfied, any appeal from the jury verdict had become moot because neither defendant was liable to the plaintiff. However, the court determined that issues regarding the cross-claims remained, and proceeded to hear General Motor's appeal on the trial court's judgment on the cross-claim.
 {¶ 26} While we find Schiller to be persuasive, we turn toBlodgett to determine whether the satisfaction of the judgment by appellant "puts an end to the controversy." Blodgett, supra, at 245. The trial court's January 31, 2005 entry, as the final judgment, terminated the case and incorporated all interlocutory orders and judgments irrespective of any specific language in the entry. Bard, supra. See, also, Kvinta, supra, at ¶ 20. Consequently, we will consider each of appellant's assignments of error in turn, consistent with the authority of Blodgett, to determine whether the satisfaction of judgment put an end to the specific controversy raised by appellant.
 {¶ 27} We next turn to appellant's first and second assignments of error. These assignments of error pertain to the decision of the trial court granting summary judgment in favor of appellee and against appellant. Though appellant satisfied judgment with respect to the controversy between itself and Lingo, an actual, genuine controversy still exists between appellant and appellee regarding the enforcement of the oral agreement between them and whether appellant is entitled to indemnification from appellee. Therefore, because the satisfaction of judgment by appellant in favor of Lingo did not put an end to the controversy between appellant and appellee, the first and second assignments of error are not moot.
 {¶ 28} Appellant's third assignment of error asserts the trial court erred in denying its cross-motion for summary judgment by holding the subject railcar was "in use" at the time of the incident. This assignment of error originates from an order of the trial court granting partial summary judgment in favor of Lingo, and denying a cross-motion for summary judgment filed by appellant against Lingo. Thus, the third assignment of error specifically implicates the controversy between Lingo and appellant and is rendered moot by the satisfaction of judgment.
 {¶ 29} In appellant's fourth and fifth assignments of error, appellant asserts that the trial court erred by failing to continue the trial for the purpose of completing discovery with respect to the issues of indemnification and contribution and by failing to allow appellant to amend the third-party complaint to add additional parties. Appellant filed these motions on November 10, 2004, after appellee was no longer a party to the action. Both of the motions were opposed by Lingo. These motions are associated with the controversy between appellant and Lingo and therefore rendered moot by the satisfaction of judgment. Accordingly, appellant's fourth and fifth assignments of error are moot.
 {¶ 30} Accordingly, we grant appellee's motion to dismiss with respect to appellant's third, fourth, and fifth assignments of error as they are moot and deny the motion to dismiss with respect to appellant's first and second assignments of error. Therefore, appellee's motion to dismiss is granted in part and denied in part. Having denied appellee's motion to dismiss appellant's first and second assignments of error, appellee's motion for attorneys' fees is denied.
 {¶ 31} We now turn to the merits of appellant's first and second assignments of error. Our review of the granting of summary judgment is de novo. Coventry Twp. v. Ecker (1995),101 Ohio App.3d 38, 654 N.E.2d 1327. Summary judgment is only appropriate when the party moving for summary judgment demonstrates that (1) no genuine issue of material fact remains, (2) the moving party is entitled to judgment as a matter of law, and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and construing the evidence most strongly in favor of the nonmoving party, that conclusion is adverse to the party against whom the motion for summary judgment is made. Civ.R. 56(C); State ex rel. Duncan v. Mentor CityCouncil, 105 Ohio St.3d 372, 2005-Ohio-2163, 826 N.E.2d 832, at ¶ 9.
 {¶ 32} The moving party bears the responsibility of informing the trial court of the basis for the motion, and identifying those portions of the record before the trial court which demonstrate the absence of a genuine issue of material fact on the essential elements of the claims of the nonmoving party.Dresher v. Burt (1996), 75 Ohio St.3d 280, 292, 662 N.E.2d 264. As the Supreme Court of Ohio stated:
The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56 which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims.
Id. at 293.
 {¶ 33} Once the moving party has satisfied its burden, "the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party." Vahila v. Hall (1997), 77 Ohio St.3d 421,429, 674 N.E.2d 1164, quoting Dresher, supra, at 293. The evidence must be construed in favor of the nonmoving party. SeeWilliams v. First United Church of Christ (1974),37 Ohio St.2d 150, 66 O.O.2d 311, 309 N.E.2d 924.
 {¶ 34} As the issues presented in appellant's first and second assignments of error both concern indemnification, we will begin with a review regarding indemnification as a guide to our determination. Indemnification "is a right of a person who has been compelled to pay what another should pay in full to require complete reimbursement." Travelers Indem. Co. v. Trowbridge
(1975), 41 Ohio St.2d 11, 14, 70 O.O.2d 6, 321 N.E.2d 787, citingMaryland Cas. Co. v. Frederick Co. (1944), 142 Ohio St. 605,607, 27 O.O. 529, 53 N.E.2d 795. Put another way, an indemnification claim only exists "if the other person was liable to pay so under the law." Ohio Dept. of Admin. Servs. v. RobertP. Madison Internatl., Inc. (2000), 138 Ohio App.3d 388, 397,741 N.E.2d 551. Indemnity therefore arises from either an express or an implied contract. Travelers, supra, at 14. Consequently, contracts for indemnification are governed by the general principles of contract enforcement.
 {¶ 35} Even in the absence of an express contract for indemnification, indemnity may arise from an implied contract. Ibid. "An implied contract of indemnity should be recognized in situations involving related tortfeasors, where the one committing the wrong is so related to a secondary party as to make the secondary party liable for the wrongs committed solely by the other. Relationships which have been found to meet this standard are the wholesaler/retailer, abutting property owner/municipality, independent contractor/employer, and master/servant." Reynolds v. Physicians Ins. Co. of Ohio
(1993), 68 Ohio St.3d 14, 16, 623 N.E.2d 30, 31.
 {¶ 36} Thus, even when there is not an express indemnification contract between parties, an implied contract of indemnity may exist in a situation where tortfeasors are in a relationship where one tortfeasor may be held liable for the other tortfeasor's actions. McClorey v. Hamilton Cty. Bd. ofElections (1998), 130 Ohio App.3d 621, 627, 720 N.E.2d 954, citing Whitney v. Horrigan (1996), 112 Ohio App.3d 511, 515,679 N.E.2d 315, 317. However, implied indemnification is only available to a party in limited circumstances where the party owes only secondary legal responsibilities and is passively negligent. Mahathiraj v. Columbia Gas of Ohio, Inc. (1992),84 Ohio App.3d 554, 617 N.E.2d 737, citing Lattea v. Akron (1982),9 Ohio App.3d 118, 122, 9 OBR 182, 458 N.E.2d 868, 9 OBR 182. Thus, "[i]ndemnification is not allowed when the two parties are joint or concurrent tortfeasors and are both chargeable with actual negligence." Reynolds, supra, at 16.
 {¶ 37} Primary liability arises when a party "is actively negligent or has actual knowledge of a dangerous situation and acquiesces in the continuation thereof." Whitney, supra, at 515, citing Mahathiraj, supra, at 564. In contrast, secondary liability, similar to vicarious liability, arises "where a relationship exists between the tortfeasors that permits one tortfeasor to be held liable for the consequences of the other's actions." Mahathiraj, at 564. Consequently, "in order to qualify for indemnification, the party claiming the right must be merely passively negligent. Conversely, where two parties actively participate in the commission of a tort they are deemed concurrent or joint tortfeasors, and no right of indemnification exists between the two." Id. at 564. See, also, Whitley, at 317 ("If appellant was actively negligent, he has no right of indemnification."). If a party seeking implied indemnification is actively negligent, the negligence of the other party, whether greater or lesser, does not negate the active negligence or create an implied indemnification situation. Mahathiraj at 565 ("difference in degrees of negligence between tortfeasors not a basis for active/passive indemnification").
 {¶ 38} Appellant asserts in its first assignment of error that the trial court erred when it granted summary judgment in favor of appellee and determined that appellant was not entitled to express indemnification from appellee.[4] Specifically, appellant asserts that the trial court erred in determining that no enforceable contract existed between appellant and appellee and that the oral contract between appellant and appellee could not be performed within one year, and thus violated the Statute of Frauds.
 {¶ 39} In response, appellee asserts it was never a party to an oral agreement between appellant and Conrail. Alternatively, appellee claims appellant failed to present evidence that said oral agreement contained an express indemnification provision and further that such argument is waived as it as not been raised below. Finally, appellee asserts that the trial court did not err in granting summary judgment as the trial court correctly determined that the oral contract violates the Statute of Frauds because the agreement could not be performed within one year.
 {¶ 40} The trial court determined that the alleged oral agreement requiring appellee to inspect railcars before sending them to appellant was an agreement not to be performed within one year from its making and therefore violated the Statute of Frauds. The trial court concluded that because the alleged contract violated the Statute of Frauds, the oral contract was not enforceable, and therefore appellant was not entitled to express indemnification from appellee for breach of contract.
 {¶ 41} Contracts that violate the Statute of Frauds are unenforceable. The Statute of Frauds is codified in R.C. 1335.05
and states in pertinent part:
No action shall be brought whereby to charge the defendant, * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized.
 {¶ 42} The Supreme Court of Ohio has interpreted R.C.1335.05, noting that:
For over a century, the "not to be performed within one year" provision of the Statute of Frauds, in Ohio and elsewhere, has been given literal construction. The provision applies only to agreements which, by their terms, cannot be fully performed within a year, thus, where the time for performance under an agreement is indefinite, or is dependent upon a contingency which may or may not happen within a year, the agreement does not fall within the Statute of Frauds.
Sherman v. Haines (1995), 73 Ohio St.3d 125, 127,652 N.E.2d 698.
 {¶ 43} Consequently, "a promise which is not likely to be performed within a year, and which in fact is not performed within a year, is still not within the Statute of Frauds if at the time the contract is made, there is a possibility in law and in fact that full performance may be completed before the expiration of a year." Ford v. Tandy Transp., Inc. (1993),86 Ohio App.3d 364, 382, 620 N.E.2d 996. See, also, Lightbody v.Rust, 8th Dist. No. 80927, 2003-Ohio-3937, ¶ 40 (oral contracts that potentially may be completed within one year are outside of the Statute of Frauds). Alternatively, if an oral contract is incapable of being performed within a year of its making, the contract is within the Statute of Frauds, and is therefore unenforceable. Hummel v. Hummel (1938),133 Ohio St. 520, 11 O.O. 221, 14 N.E.2d 923, paragraph one of the syllabus. See, also, Jacobs v. Joseph E. Copp Co. (1930),123 Ohio St. 146, 154, 174 N.E. 353, 9 Ohio L.Abs. 60, ("Every statute of fraud contemplates the existence of a cause of action, which, but for the inhibition of the statute, might be maintained.")
 {¶ 44} If the parties, upon formation of a contract, did not intend to perform the contract within one year, the contract falls within the purview of the Statute of Frauds as codified in R.C. 1335.05. Pro Arts, Inc. v. K Mart Corp. (N.D. Ohio 1984),580 F.Supp. 1073, 1075. Moreover, "contracts `not to be performed within one year' include only agreements which by a fair and reasonable interpretation of the terms used by the parties and in view of all the circumstances existing at the time do not admit performance, according to the language and intention, within a year from the time of the making of the contract." Robnolte v.Kohart (1947), 81 Ohio App. 1, 5, 36 O.O. 331, 76 N.E.2d 913
 {¶ 45} The foregoing principles are applicable to the instant case. Appellant asserts that it entered into "oral understandings" with Conrail around 1991 or 1992. Appellee asserts that it was not a party to the agreement, and asserts that appellant failed to request appellee to honor the agreement. We note that the issue of corporate successor liability was not litigated in the proceedings below. Generally, issues not addressed in the trial court will not be considered for the first time on appeal. General Motors Acceptance Corp. v. Ferguson,
10th Dist. No. 04AP-795, 2005-Ohio-899, at ¶ 11. However, because we must construe the evidence in a light most favorable to the appellant, we will presume the existence of the oral contract and consider appellee as the successor party to the oral contract between appellant and Conrail for purposes of our review for this assignment of error.
 {¶ 46} As part of the oral contract, appellant asserts it agreed that employees of appellant would not enter into Buckeye rail yard owned by Conrail for the purpose of inspecting and repairing railcars. According to appellant, Conrail would only tender railcars to appellant after inspecting outgoing railcars and bringing the railcars into compliance with safety rules and regulations.
 {¶ 47} The agreement, by its own terms, evinces an intention of the parties of an agreement incapable of being performed within one year. Pro Arts, supra, at 1075; Robnolte, supra, at 5. The purpose of the agreement was to inspect railcars over an extended period of time. See Mills v. Mills (1952),70 Ohio L.Abs. 111, 127 N.E.2d 222. Specifically, the oral contract is incapable of being fully performed by the parties within one year because the terms of the agreement itself reveal that the parties did not intend the agreement to be completed within one year, as performance required Conrail to continually inspect and repair railcars before sending them to appellant. Pro Arts, supra, at 1075; Robnolte, at 5.
 {¶ 48} Thus, we determine that the evidence indicates that there was no potential for the agreement to be performed within one year. Lightbody, supra, at ¶ 40. Consequently, the oral contract falls within R.C. 1335.05, and therefore cannot be enforced against appellee in an action for a breach of the contract. Hummel, supra. Because the oral contract between the appellant and appellee is not enforceable, appellant is precluded from seeking indemnification based on an express contract.Travelers, supra, at 14.
 {¶ 49} We determine that appellee met its burden by presenting evidence that enforcement of the oral agreement was barred as being against the Statute of Frauds. Appellant failed to meet its burden under Civ.R. 56(C) by failing to demonstrate the existence of a genuine issue of material fact in the proceedings below that the oral agreement was not within the purview of the Statute of Frauds and thus enforceable. Accordingly, we find that the trial court correctly determined that the oral agreement violated the Statute of Frauds and did not err in granting summary judgment in favor of appellee on the issue of express indemnification. Appellant's first assignment of error is overruled.
 {¶ 50} We next turn to appellant's second assignment of error. Appellant asserts that the trial court erred in its determination that it was actively negligent and therefore not entitled to implied indemnification. Specifically, appellant asserts that because appellee was the owner of the defective railcar and because appellee sent the defective railcar to appellant in violation of federal regulations and railroad association agreements, that appellant can only be found to be merely passively negligent in the commission of the tort.
 {¶ 51} In response, appellee asserts that appellant was not passively negligent, but actively negligent in the commission of the tort, and thus barred from seeking indemnification. According to appellee, Lingo should have been trained to report a railcar with missing handholds to a supervisor, but did not know how to do so. Additionally, appellee contends that appellant was negligent for not inspecting the railcar and discovering the missing handholds upon receiving the railcar. Appellee argues that because Lingo had known prior to the accident that the railcar was missing the handholds, and had boarded and rode the railcar while it was moving earlier on the day of the accident, appellant had actual knowledge of the dangerous situation. Therefore, appellee contends that appellant acquiesced in the continuation of the situation, was actively negligent and not entitled to a right of implied indemnification from appellee.
 {¶ 52} The trial court found that appellant was actively negligent, and therefore not entitled to implied indemnification from appellee. It reasoned that appellant "was at best a joint tortfeasor" and that appellant "was anything less than actively negligent." In coming to its conclusion, the trial court discussed at length the location of the railcar in the days and months before the injury, and noted that appellant had the railcar for over a month relatively near to the time of the injury. The trial court additionally noted that on May 13, 2002, Lingo noticed that the railcar had been misrouted to appellant's rail yard, reported it to his supervisor, and moved it aside at their direction. Based on these facts, the trial court reasoned that appellant "had specific notice of the car and an opportunity to note its condition. But nothing was done to put the handholds in place. Most likely, that is because [appellant] saw no need for them to be in place. Its employees routinely rode and moved flatcars without the requisite handholds."
 {¶ 53} In reviewing whether or not appellant was merely passively negligent, a review of the location and movement of the railcar is revealing. On March 21, 2001, appellant received the railcar from appellee with boilers destined for the Dresden power facility, with two idler cars attached to the railcar. The two idler cars were returned to appellee on April 13, 2001. On April 25, 2001, appellant delivered the railcar with the boilers to the Dresden power facility. The boilers were removed from the railcar at the power facility, and the railcar returned to appellant. On April 26, 2001, appellant returned the railcar to appellee. On May 13, 2001, the railcar was misrouted to appellant. On May 15, 2001, Lingo boarded the railcar once while it was moving without incident. Later on the morning of May 15, 2001, Lingo boarded the railcar again, slipped, and was injured.
 {¶ 54} Appellant had an opportunity to inspect and repair the railcar in question before Lingo's injury. When appellant received the railcar back from the Dresden power facility, the railcar lacked both idler cars and handholds, and therefore did not comply with safety rules and regulations. The evidence shows that appellant was responsible for bringing the railcar back into compliance upon receipt from the Dresden power facility, but did not replace the handholds at that time. The evidence also indicates that at the time a railcar is interchanged to another railroad, it is the obligation of the receiving railroad to inspect the railcar at the interchange to ensure it complies with all applicable rules and regulations. The railcar was misrouted, and interchanged to appellant on May 13, 2001. Appellant was aware for two days that it had a misrouted railcar in its yard as it specifically set it aside. At this point, appellant had the opportunity to inspect the railcar and note that it lacked handholds, and replace the handholds to bring the railcar back into serviceable condition before permitting its employees to ride on the railcar. However, without repairing the railcar, appellant required Lingo to assemble the noncompliant railcar into the CBT train.
 {¶ 55} The evidence further established that appellant permitted its employees to board moving railcars. Lingo had boarded a moving railcar without handholds in front of his supervisor before the accident, even though appellant's supervisors were required to instruct employees when they observed dangerous practices to ensure that the practices of the employee were safe. On the day of the incident, Lingo boarded the railcar while it was moving and held on to it by leaning over and holding the top of it to balance himself. By not training its employees to report railcars without handholds, and by permitting its employees to board moving railcars, appellant can be deemed to have acquiesced in the continuation of a dangerous condition.
 {¶ 56} Construing the evidence most strongly in favor of the appellant, we conclude that reasonable minds could come to but one conclusion and that conclusion is that appellant was not merely passively negligent in the commission of the tort involving the injury of the plaintiff. Consequently, we conclude that appellant is not entitled to implied indemnification from appellee. Thus, the trial court correctly granted summary judgment in favor of appellee on the issue of implied indemnification. We therefore overrule appellant's second assignment of error.
 {¶ 57} Having overruled appellant's first and second assignments of error, and having granted the motion to dismiss to the extent that appellant's third, fourth, and fifth assignments of error are moot, the judgment of the Franklin County Court of Common Pleas is affirmed.
Motion to dismiss granted in part, and denied in part, andmotion for attorneys' fees denied; judgment affirmed.
Klatt, P.J., and French, J., concur.
[1] The FELA claim alleged in part that "injuries to Plaintiff occurred as a direct and proximate result of the negligence of [appellant] in failing to provide Plaintiff with a reasonably safe place to work; in failing to implement and follow safe operating procedures; in failing to provide necessary and appropriate instruction, training, and warnings; in failing to conduct reasonable inspections of its equipment; in failing to provide reasonably necessary and safe equipment; and in failing to provide adequate help and assistance."
[2] The FSAA claim alleged in part that "Plaintiff was injured as a direct result of [appellant] operating defective, unsafe, improperly maintained, and inefficient equipment, including, but not limited to, defective handholds, grab irons, handrails and/or steps."
[3] Memorandum of appellee in support of motion to dismiss, at 5.
[4] Appellant has not appealed the trial court's determination that it is not entitled to contribution from appellee.