[Cite as *Conlan v. Ag-Renu at Versailles, Inc.*, 2017-Ohio-4321.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
DARKE COUNTY**

| | | |
|---|---|---|
| JOHN E. CONLAN, et al. | : | |
| | : | |
| Plaintiffs-Appellants | : | C.A. CASE NO.   2016-CA-11 |
| | : | |
| v. | : | T.C. NO. 15-CV-57 |
| | : | |
| AG-RENU AT VERSAILLES, INC., et al. | : | (Civil Appeal from Common Pleas Court) |
| | : | |
| Defendants-Appellees | : | |
| | : | |
| | : | |

· · · · · · · · · ·

**O P I N I O N**

Rendered on the _____16th_____ day of _____June_____, 2017.

· · · · · · · · · ·

SUSAN D. SOLLE, Atty. Reg. No. 0071269, 1 S. Main Street, Suite 1300, Dayton, Ohio 45402
        Attorney for Plaintiffs-Appellants

JOHN F. MARCHAL, Atty. Reg. No. 0066432, 116 W. Fourth Street, Greenville, Ohio 45331
        Attorney for Defendant-Appellee Ag-Renu at Versailles, Inc.

· · · · · · · · · · · ·

FROELICH, J.

{¶ 1} John and Carol Conlan appeal from a judgment of the Darke County Court of Common Pleas, which invalidated their and other parties' liens and mortgages related to property owned by Ag-Renu at Versailles, Inc. ("Ag-Renu"), quieted title of the property

in Ag-Renu's name, and ordered the Conlans to pay Ag-Renu's attorney fees and costs.

{¶ 2} For the following reasons, the trial court's judgment will be dismissed for lack of a final appealable order.

## I. Factual and Procedural History

{¶ 3} The Conlans' complaint alleges the following facts.

{¶ 4} Ag-Renu at Versailles is a company whose sole shareholder was Harry Whittaker. (The record reflects that Whittaker is now deceased.) Ag-Renu owns property located at 10203 Christian in Versailles, Ohio. Between 2006 and 2011, John Conlan was employed as president of Ag-Renu. John's wife, Carol, was also employed by Ag-Renu to perform a variety of administrative duties. The Conlans allege that John's salary was $6,000 per month and Carol's salary was $4,000.

{¶ 5} Ag-Renu allegedly failed to pay the Conlans' salaries on numerous occasions. On six occasions, Ag-Renu (by John Conlan and allegedly with Whittaker's knowledge and approval) issued a promissory note representing John's unpaid salary: (1) $91,500 for December 2006 through the first week of March 2008, (2) $29,100 for three weeks in March 2008 through July 2008, (3) $26,400 for September through December 2008, (4) $26,400 for January 2009 through April 2009, (5) $52,800 for September 2009 through May 1, 2010, and (6) $88,000 for "December 1, 2006 through December 31, 2010 less the sum of mortgages previously taken." The notes were secured by mortgages on Ag-Renu's property.

{¶ 6} Carol Conlan also alleged that Ag-Renu repeatedly failed to pay her salary, and that Ag-Renu (by John Conlan and allegedly with Whittaker's knowledge and approval) issued promissory notes to her representing her unpaid salary: (1) $6,000 for

February 2008 and two weeks in March 2008, (2) $52,400 for July 1, 2007, through July 31, 2008, (3) $17,600 for September through December 2008, (4) $17,600 for January through April 2009, (5) $35,200 for September 2009 through May 1, 2010, and (6) $43,900 for July through December 2010. Ag-Renu also issued a promissory note for $9,581 representing "loans and expenses owed to her" for February through October 2010. These notes were also secured by mortgages on Ag-Renu's property.

{¶ 7} In 2007, Conlan formed Ag-Environ-Tech, LLC ("AET") to purchase Ag-Renu. Pursuant to a collateralization agreement, Ag-Renu (by John Conlan and allegedly with Whittaker's knowledge and approval) gave a mortgage deed to Chris Hepp, Dave Sanders, Richard Palmer, and John Conlan to "secure the repayment of the Mortgagees' investment in Class A Units issued by [AET]" in the amount of $180,000. Similar mortgage deeds were executed in the amount of $60,000 to George Hillenbrand III and Lawerence Burtschy, and in the amount of $60,000 to David Meyer and CFRPHD Family Investments, LLC. The sale of Ag-Renu to AET was never completed.

{¶ 8} On February 11, 2015, the Conlans filed a foreclosure complaint against Ag-Renu and others with an interest in Ag-Renu's property, seeking foreclosure of the mortgages and the sale of the property. John Conlan sought judgment in the amount of $314,200 for unpaid compensation, and Carol Conlan sought judgment in the amount of $182,281 for unpaid compensation and $4,300 for an unpaid loan. The complaint sought an additional $300,000 based on the collateralization agreement.

{¶ 9} Ag-Renu initially did not file an Answer, but the remaining defendants (except the Darke County Treasurer) filed Answers that admitted the allegations in the complaint and joined "in the prayer of the Plaintiffs." The trial court entered a default judgment

against Ag-Renu and, on July 6, 2015, entered a "Consent/Agreed Judgment Entry and Decree of Foreclosure." Ag-Renu subsequently sought Civ.R.60(B) relief, which was granted.

{¶ 10} On January 12, 2016, Ag-Renu filed its Answer with counterclaims and a cross-claim. Ag-Renu alleged that John Conlan had no authority to execute promissory notes and mortgages in favor of himself or his wife. The company further alleged that Conlan "used the funds solicited from the investors/mortgagees * * * for his personal benefit, the benefit of his wife and/or the benefit of his other business interests." Ag-Renu brought claims against John Conlan for breach of fiduciary duty, conflict of interest/ self-dealing, conversion, slander of title, and fraud. Ag-Renu brought a claim against Carol Conlan for slander of title. Ag-Renu further brought a claim against all parties, arguing that all of their liens were invalid and seeking to quiet title in Ag-Renu's favor.

{¶ 11} The Conlans and CFRPHD filed Answers to Ag-Renu's counterclaims/cross-claim. None of the other defendants responded.

{¶ 12} Trial was originally scheduled for March 31, 2016, but the date was reset for a settlement conference. The Conlans and Ag-Renu appeared and reached a settlement, which was read into the record. Stated simply, the Conlans agreed to buy the property, including the building and fixtures, for $182,500 and to close within 120 days (by July 29, 2016). After the terms of the settlement were stated on the record and the parties expressed their agreement to those terms, the trial court made the following statement:

> THE COURT: Moving forward, what the attorneys do is, then, write this
> agreement and get it signed in a manner in which they feel is appropriate.

So I expect that they would have you sign, Mr. Conlan, Miss Whittaker [Harry's Whittaker's daughter], so they get that done and then that then becomes the settlement in the case.

There's still other interests out there so I ask the attorneys to file default judgments where necessary and appropriate as to the non-appearing parties. Reserve the issue about what to do with CFRPHD in case it becomes a problem. * * *

So let's go ahead and get defaults where necessary, have the attorneys draft – you can decide whether it's a filed agreement or not but there should be some memorialization. I make good notes. We've got the record if necessary to separate this out in the future. I'll put the scheduling orders on because that also puts other parties on notice.

I don't expect you to invest time and effort now in litigation preparation. So recognize that I'm doing this because I have docket management requirements but when cases settle, we don't go that route. Moving forward it would be about the contract, okay. * * *

**{¶ 13}** The trial court filed a scheduling entry the same day (March 31, 2016). The entry set deadlines for discovery and the exchange of trial materials, set a dispositive motion deadline of June 24, 2016, and scheduled the trial for August 23 and 24, 2016. The entry indicated that there would not be a pretrial/settlement conference, unless requested by the parties. It further stated, "Any sanctions against non-appearing parties are reserved for later determination, following notice."

**{¶ 14}** After the March 31 settlement conference, John Conlan became dissatisfied

with his counsel and the settlement; his counsel withdrew, and the Conlans proceeded pro se. Conlan sent a letter to the court, asking various questions about the implementation of the settlement agreement; the court filed an entry indicating that it could not provide legal advice and that no decision would be forthcoming in response to the correspondence. On June 24, 2016, Conlan filed a "Motion to Set Aside the March 31, 2016 Settlement Agreement." The trial court did not address this motion. The Conlans also sought a transcript of the settlement hearing.

{¶ 15} On July 7, 2016, Ag-Renu moved for a default judgment against the defendants who failed to respond to its counterclaims/crossclaim (Hepp, Sanders, Palmer, Hillenbrand, Burtschy, Meyer, and AET). On July 20, the trial court granted the default judgment in favor of Ag-Renu, as requested. The court further found that "said parties failed to attend the settlement conference which occurred on March 31, 2016" and that, consequently, they "are barred from asserting any claims to the real estate which is the subject of this matter."

{¶ 16} The sale of the property by Ag-Renu to the Conlans, in accordance with the settlement agreement, did not occur. On August 23, 2016, Ag-Renu appeared for trial in accordance with the March 31 scheduling order. No other party appeared. The court suggested to Ag-Renu that, "instead of calling witnesses, let's let you proffer the testimony that the evidence would show today." Counsel for Ag-Renu proffered that the evidence would show that none of the Conlans' liens were valid and that the Conlans lacked the authority to sign the mortgages. Counsel further stated that, with respect to the mortgages related to investors in a company that was going to acquire Ag-Renu, the acquisition never happened and the liens are therefore invalid "on the basis that the

predicate upon which they were granted never occurred." As to Ag-Renu's cross-claim and counterclaims, counsel stated:

In our cross-claim and counterclaim, we've asked for quiet title indicating or alleging that those liens are invalid and that the title to the property should be quieted in the name of Ag-Renu solely. * * *

The other issues that we would proffer evidence on would be related to the claims relating to Carol Conlan and John Conlan's claims for these past wages. Obviously, that would be their duty to appear and prove those. We believe, obviously, no one is here today so that will not occur. Counter claims were filed related to those wage claims alleging numerous breach of duty and confidentiality and conflict of interest. We have asserted money damage claims in conjunction with those counterclaims.

At this point, we are not intending to proceed and will not be proffering evidence on those money damages claims except that we've alleged attorney fees as part of this matter in terms of the quiet title. We believe that we would be entitled to the attorney fees, and I have my statements before me now and will proffer those to the Court if necessary, but the total amount of the attorney fees would be $15,531 that we allege is based on these slander [of] title issues that would be appropriately granted by the Court in this case.

In addition to that, Your Honor, we would just ask that there be the standard judgment interest according to state law and that the cost of this matter be paid by John Conlan.

**{¶ 17}** Following the proffer from Ag-Renu's counsel, the trial court orally declared the parties' settlement to be "invalid for failing of the parties to fulfill its terms." The court noted that, "[i]f there was any intentions at the time to go ahead, it quickly dissolved. So I'll declare that the prior attempt to settle is nothing more than [an] attempt. No compliance and that's vacated." The trial court further determined:

Then I'll also declare that Ag-Renu is declared to be the owner. The public record would show that but then I'll also find that based upon the self-dealing, the slander of title, the fraudulent conduct by John Conlan and/or Mary [sic] Conlan that their claims and liens are invalid, cancelled of record. Liens by third parties, what we would describe as investors, for lack of consideration are also declared to be invalid. They'll be cancelled of record.

I'll grant a lump sum judgment in your favor against John E. Conlan pursuant to count number five of your cross-claim, or counterclaim I guess it is, for the total sum of $15,531 plus statutory interest, plus costs. The costs would be assessed against both the plaintiffs.

The trial court instructed Ag-Renu's counsel to prepare a judgment encompassing those terms.

**{¶ 18}** On August 29, 2016, the trial court issued a judgment entry, noting that Conlan was in breach of the settlement agreement and that trial had been set for August 23 pursuant to the March 31 scheduling order. The entry indicated that, based on Ag-Renu's proffer and in light of all other parties' failure to appear for trial, the trial court held that (1) the mortgages and liens in favor of the Conlans and other parties were invalid, (2)

the clerk of court shall cause the cancellation of those mortgages, (3) all of the Conlans' claims "are without merit and are hereby dismissed," (4) title to Ag-Renu's property "is quieted in the name of Ag-Renu at Versailles, Inc.," (5) Ag-Renu was entitled to attorney fees of $15,531 plus statutory interest, and (6) costs are taxed to the Conlans.

{¶ 19} The Conlans filed a motion in the trial court to stay the trial court's judgment, which the trial court granted. On appeal, the Conlans raise two assignments of error, namely that the trial court abused its discretion by dismissing their claims with prejudice without prior notice and that the trial court erred in granting judgment in Ag-Renu's favor absent the admission of any proper evidence.

{¶ 20} There are numerous issues raised by the procedural history of this case, particularly what has occurred since the trial court granted Civ.R. 60(B) relief to Ag-Renu. The trial court's statements at the March 31 settlement hearing indicated to the parties that the court considered the matter settled as to those parties and that any further proceedings related to those parties "would be about the contract." The parties were aware that the court would be filing a scheduling entry, as other parties remained, but the court indicated that it did not expect the parties to the settlement (the Conlans and Ag-Renu) to prepare for trial. Given the court's statements, it is questionable whether the Conlans were aware that they needed to appear for trial when the settlement terms were not fulfilled. Moreover, the language in the March 31 scheduling order that "[a]ny sanctions against non-appearing parties are reserved for later determination, following notice" suggested that the court would provide notice of the possible sanctions (including dismissal of claims) before imposing any sanction for non-appearance. *See also* Civ.R. 41(B).

**{¶ 21}** Additionally, it is well established that the non-appearance at trial of a non-defaulting party necessitates an ex parte trial, not a default. *E.g.*, *Ohio Valley Radiology Associates, Inc. v. Ohio Valley Hospital Assn.*, 28 Ohio St.3d 118, 502 N.E.2d 599 (1986). As stated by the Ohio Supreme Court:

The requirement that a party whose non-defaulting opponent fails to appear for trial must prove his case even in the absence of the opposing party reflects the basic nature of the burden of proof requirements in our trial system. Under that system, the sole responsibility of a defendant who has effectively contested the claimant's allegations by pleading is to refute the claimant's case after the latter has established a prima facie case by proper evidence. If the plaintiff cannot make out such a case, the defendant need not present any evidence at trial. Conversely, once a case is at issue, it is improper for a court to enter judgment against a defendant without requiring proof of the plaintiff's claim.

The proper action for a court to take when a defending party who has pleaded fails to show for trial is to require the party seeking relief to proceed ex parte in the opponent's absence. Such a procedure, which requires affirmative proof of the essential elements of a claim, is diametrically opposed to the concept of default, which is based upon admission and which therefore obviates the need for proof. This is because ex parte trials, when properly conducted, are truly trials in the sense of the definition contained in R.C. 2311.01. That is, they are "judicial examination[s] of the issues whether of law or of fact, in an action or proceeding." "Issues" are

defined in R.C. 2311.02 as follows: "Issues arise on the pleadings where a fact or conclusion of law is maintained by one party and controverted by the other. * * *" It is clear that any judgment based upon an ex parte trial is a judgment after trial pursuant to Civ.R. 58, and not a default judgment under Civ.R. 55.

(Citations omitted.) *Ohio Valley Radiology Associates, Inc. v. Ohio Valley Hospital Assn.*, 28 Ohio St.3d 118, 122, 502 N.E.2d 599 (1986), quoted by *Albrechtsen v. Mad River Apts.*, 2017-Ohio-117, __ N.E.3d __, ¶ 5 (2d Dist.).

{¶ 22} No evidence was offered at the August 23, 2016 trial. While the proffer of evidence is perhaps more expedient, it is not the equivalent of the presentation of evidence at trial.

{¶ 23} Nevertheless, we need not rule on the Conlans' specific assignments of error, because the record reflects that the trial court's August 29, 2016 judgment entry was not a final appealable order. As stated above, Ag-Renu brought counterclaims against John Conlan for breach of fiduciary duty, conflict of interest/self-dealing, conversion, slander of title, and fraud, and it brought a counterclaim against Carol Conlan for slander of title. At the August 23, 2016 trial, Ag-Renu indicated that it would not proffer evidence related to its monetary claims against the Conlans, and that it was seeking a judgment quieting title in their name and attorney fees. The trial court's August 29, 2016 judgment entry attempts to resolve the Conlans' claims, Ag-Renu's quiet title claim, and the issues of attorney fees and costs, but it did not address Ag-Renu's additional counterclaims against the Conlans. The judgment entry did not include Civ.R 54(B) certification.

**{¶ 24}** "[A]n order that neither disposes of all claims between the parties nor contains an express determination that there is no just reason for delay is an interlocutory order. * * * When an order of a trial court is interlocutory, the order remains subject to revision or modification by the trial court until and unless the order is certified as suitable for appeal, or the action is finally terminated as to all claims and all parties. Once a final judgment is issued terminating a case, all interlocutory orders are merged into the final judgment." (Citations omitted.) *Lingo v. Ohio Cent. RR. v. Norfolk S. Ry.*, 10th Dist. Franklin No. 05-AP-206, 2006-Ohio-2268, ¶ 17. *See Dibert v. Carpenter*, 2017-Ohio-689, __ N.E.3d __, ¶ 49 (2d Dist.) (quoting *Lingo*).

**{¶ 25}** At this juncture, Ag-Renu's counterclaims against the Conlans remain pending, as they were not addressed by the trial court's August 29, 2016 judgment. As a result, the trial court has yet to enter a final appealable order. Consequently, this appeal must be dismissed for want of a final appealable order.

. . . . . . . . . . . .

HALL, P.J. and TUCKER, J., concur.

Copies mailed to:

Susan D. Solle
John F. Marchal
Joseph Latas
Bryce Yoder
R. Ormsby
Chris Hepp
Dave Sanders
David Meyer
George Hillenbrand III
Lawrence Burtschy
Richard Palmer
Hon. Jonathan P. Hein